## 56825. TALBOTT v. THE STATE.

WEBB, Judge.

Lyle L. Talbott was indicted for selling hydromorphone, a violation of the Georgia Controlled Substances Act. At his trial the first witness called was Michael Dabney Rogers who testified that he began working as a paid informant for Detective Sproat of the Atlanta Police Department in October of 1977. He initially contacted Detective Sproat because he was addicted to Dilaudid and needed help in overcoming his addiction through the methadone program, and worked for him without pay. Later he would introduce Detective Sproat to a pusher and if Sproat was able to buy from them Rogers would be paid.

On December 2, 1977, Detective Sproat and Rogers attempted to set up a drug deal with Talbott. Rogers had purchased drugs from Talbott for his own use, but Talbott refused to sell to Sproat or in his presence. Sproat and Rogers went to a pub where Rogers approached Talbott and asked for drugs. Talbott refused to sell there "because it was too hot," but told Rogers to meet him down the street at Ray Lee's lounge in about five minutes. Sproat searched Rogers then gave him $80 in government money. Rogers and Talbott met in the restroom where Talbott pulled a prescription pill bottle from his pocket and sold Rogers four Dilaudids (hydromorphone capsules) for $18 a pill. Rogers left the restroom, turned the pills and change over to Detective Sproat, and Talbott was arrested.

Detective Sproat testified that Rogers worked for the police in an official capacity as an informant and was paid according to what he did; that the subject of remuneration did not arise at first, but after Rogers introduced him to

approximately six people in the Ponce de Leon area which led to sales, "He was doing such a good job, putting his safety in jeopardy, I thought that he deserved money for it. We pay informants, good informants"; that it was Rogers who first brought up Talbott's name; and that he had hoped that Rogers would introduce him to Talbott so Talbott would sell drugs directly to him (Sproat). While Rogers was paid four days after the Talbott "buy," he was never promised anything beforehand.

Talbott testified in his own behalf. He said he was an unemployed truck driver who took Dilaudid for a back injury. He admitted he went from one doctor to another to get the pills, but he denied selling any. He also denied having $1,200 in cash in his possession during a previous encounter with the police. The jury found him guilty and he was sentenced to twelve years imprisonment.

1. Based upon Williamson v. United States, 311 F2d 441 (5th Cir. 1962), Talbott asserts that the testimony of Michael Rogers "was obtained in violation of the due process clause" and should have been excluded; and that it was therefore error to deny his motion for acquittal. We do not agree.

Williamson "held that it constituted entrapment as a matter of law for the government to employ an informer on a contingent fee arrangement to produce evidence against a particular named defendant as to crimes not yet committed, in the absence of some justification or excuse for such an arrangement. The court suggested that justification or excuse might be found in the fact that federal agents had knowledge that the particular defendant was engaging in illegal liquor dealings, or by showing that the informer was carefully instructed on the rules against entrapment and that the informer understood that he was only to offer the suspect an opportunity to commit the crime, and was not to induce it" Sears v. United States, 343 F2d 139, 144 (5th Cir. 1965). In both Williamson and Sears the informants bore grudges against the defendants and sought participation in their arrest and convictions for personal satisfaction.

However, the Fifth Circuit has found justification for a contingent fee arrangement where the accused has a past record and neighbors had complained to authorities

of his illegal activities. Hill v. United States, 328 F2d 988 (5th Cir. 1964), cert. den. 379 U. S. 851 (1964). And in Heard v. United States, 414 F2d 884, 886 (5th Cir. 1969) no abuse was found where the informer "at the time of the transaction was an addict, that he was a convicted felon awaiting trial on grand larceny charges, that he was sometimes paid for his services as an informer, that he was paid for results rather than information, and that he discussed with narcotics agents the fact that he would be expected to testify in this case. *Although these facts may affect the credibility of the witness, they do not make his testimony insufficient to support the verdict."* (Emphasis supplied.) See also Bullock v. United States, 383 F2d 545 (5th Cir. 1967); Harris v. United States, 400 F2d 264 (5th Cir. 1968); United States v. Durham, 413 F2d 1003 (5th Cir. 1969), cert. den. 396 U. S. 839 (1969).

It likewise appears that no other circuit has expressly followed Williamson, preferring to leave the matter of paying informants for the jury to consider in weighing the credibility of the witness informant. See, e.g., United States v. Smalls, 363 F2d 417 (2d Cir. 1966); cert. den. 385 U. S. 1027 (1967); United States v. Grimes, 438 F2d 391 (6th Cir. 1971), cert. den. 91 S. C. 1684 (1971); Corcoran v. United States, 427 F2d 16 (9th Cir. 1970); Maestas v. United States, 341 F2d 493 (10th Cir. 1965).

We think it is abundantly clear from study of the later application of the Williamson standards that in the instant case, whether or not Rogers received a contingent fee as a paid informant, there was sufficient justification to create an issue of credibility which was properly left for the jury to weigh. The verdict was supported by the evidence, and was not contrary to the evidence or the law.

2. The judge fully and accurately charged the jury as to the credibility of witnesses. Talbott insists, however, that he erred in failing to charge without request "that the manner in which the informer was paid by the state, that is, a contingent fee arrangement, could be considered by the jury in determining the credibility of the witness." " ' "A correct instruction to the jury is not subject to exception for failure, in absence of an appropriate request, to embody an additional definitive or explanatory charge." ' *Griffin v. State,* 195 Ga. 368, 371,

372 (24 SE2d 399)." *Phillips v. State,* 142 Ga. App. 581, 582 (3) (236 SE2d 519) (1977); *Holland v. State,* 143 Ga. App. 817 (1) (240 SE2d 161) (1977), cert. den. 143 Ga. App. 910.

3. Remaining enumerations fail to reveal any error which has harmed Talbott. " 'It is an old and sound rule that error to be reversible must be harmful. *Dill v. State,* 222 Ga. 793 (1) (152 SE2d 741). . .' *Watts v. State,* 141 Ga. App. 127, 129 (2) (232 SE2d 590) (1977)." *Barnes v. State,* 145 Ga. App. 38, 39 (3) (243 SE2d 302) (1978).

*Judgment affirmed. Quillian, P. J., and McMurray, J., concur.*

ARGUED NOVEMBER 6, 1978 — DECIDED NOVEMBER 20, 1978.

*Joe Salem,* for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, R. David Petersen, J. Wallace Speed, Assistant District Attorneys,* for appellee.