63765. GILSTRAP v. THE STATE.
63766. ALLISON v. THE STATE.

CARLEY, Judge.
Appellants in these companion cases were jointly indicted and tried for conspiracy to violate Code Ann. § 79A-811 (b). The jury returned verdicts of guilty and appellants appeal from the judgments of conviction and sentences entered on the verdicts. Substantially similar enumerations of error have been filed in each case. Accordingly, the two appeals have been consolidated for appellate review and will be considered in this single opinion. The record is voluminous and the facts will be discussed only insofar as they are relevant to the particular legal issue under discussion.

1. Pursuant to Ga. Code Ann. § 26-3004, investigating officers sought and obtained a warrant, subsequently extended, authorizing a wiretap on the telephone located at the "headquarters" of the suspected conspiracy. Appellants' motion to suppress the taped evidence obtained from the wiretap was denied. On appeal, appellants enumerate as error the denial of the motion to suppress this evidence, asserting that the applications submitted in support of wiretap warrant were fatally defective.

"Wiretapping and surveillance are the subjects of federal and state law and both must be complied with where applicable." *Orkin v. State,* 236 Ga. 176, 179 (223 SE2d 61) (1976). In a convoluted series of arguments appellants assert that there was insufficient compliance with the requirements of 18 USCA § 2518 (1) (c) that "[e]ach application for an order authorizing or approving the interception of a wire or oral communication . . . shall include the following information: . . . a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous . . ." We have studied the applications and find that, on their face, they are in total and sufficient compliance with 18 USCA § 2518 (1) (c). See *State v. Bilbo,* 240 Ga. 601 (242 SE2d 21) (1978).

Appellants contend that the facially valid applications contain material misrepresentations with regard to "other investigative procedures." The evidence adduced on the motion to suppress amply demonstrates that the applications contained no misrepresentations

in this regard. See generally *Lee v. State,* 239 Ga. 769, 773 (3) (238 SE2d 852) (1977). Only one of appellants' assertions requires elaboration. It appears that some time after the 20-day extension authorized by Code Ann. § 26-3004 (e) had been granted, a confidential informant was found who introduced an undercover agent to certain members of the alleged conspiracy for the purpose of purchasing drugs. It appears that this post-warrant development of an investigative source "other" than the wiretap was made known to the issuing magistrate who then independently made the determination that, under the existing circumstances, continuing the tap was necessary for a completely successful investigation of the case. Accordingly, the tapping was allowed to continue for the full 20-day extension which had previously been authorized. On these facts we find no violation of 18 USCA § 2518 (1) (c). See United States v. Pacheco, 489 F2d 554, 564-565 (16, 17) (5th Cir. 1974).

Appellants also attack the applications on the basis of an insufficient compliance with 18 USCA § 2518 (1) (e). That statute requires that the application contain "a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire or oral communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application . . ." "The statute does not require a fully detailed statement about the contents of the interception . . . " United States v. Kilgore, 518 F2d 496, 500 (5th Cir. 1975). Appellants point to no evidence which would show that the applicant had more knowledge concerning the previous wiretaps application than was disclosed by him in the applications. Under such circumstances, we must assume that the disclosure which was made was a "full and complete statement of the facts concerning all previous applications known" to the applicant. Cf. *Granese v. State,* 232 Ga. 193, 198 (3c) (206 SE2d 26) (1974).

For the reasons discussed above, it was not error to deny appellants' motion to suppress the wiretap evidence because of insufficient compliance with the requirements of 18 USCA § 2518 (1) (c) and (e).

2. Appellants also assert an erroneous denial of their motion to suppress based upon the state's insufficient compliance with 18 USCA § 2518 (8) (a). That statute provides in relevant part: "Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions . . . The presence of the seal provided for by this subsection, or a satisfactory

explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire or oral communication or evidence derived therefrom . . ." Contrary to appellants' apparent assertions, "where a single order [is] extended, the tapes [do] not have to be sealed until the end of the last extension. Where the intercept is of the same premises and involves substantially the same persons, an extension under these circumstances requires sealing only at the conclusion of the whole surveillance. [Cits.]" United States v. Scafidi, 564 F2d 633, 641 (2d Cir. 1977). The evidence with regard to the custody of the tapes *prior* to their being sealed after the end of the extension was sufficient to demonstrate with reasonable certainty that no deliberate tampering with or accidental alteration to the tapes had resulted during the presealing period. See generally *Alfred v. State,* 157 Ga. App. 221 (276 SE2d 892) (1981).

The statute requires that the tapes be sealed "[i]mmediately upon the expiration of the period of the order, or extensions thereof . . ." In the instant case, there was apparently a two day delay between the expiration of the extension of the wiretap order and the tapes being sealed by the judge. However, in spite of the two day delay, on the record before us "[t]here was no showing of prejudice to [appellants] in the delay. The purpose of [18 USCA § 2518 (8) (a)] is to safeguard the recordings from editing or alteration. There was no showing that the integrity of the interceptions was in any way violated." United States v. Sklaroff, 506 F2d 837, 840 (5th Cir. 1975). It appears that the two day delay in the instant case was occasioned, at least in part, by "administrative delay." See United States v. Falcone, 505 F2d 478, 483-484 (3d Cir. 1974). Accordingly, the two day delay in sealing the tapes does not constitute a violation of 18 USCA § 2518 (8) (1) requiring the suppression of those tapes.

3. The trial court did not err in refusing to allow appellants' counsel to withdraw a prior stipulation that the court reporter would not be required to transcribe the wiretap tapes while they were being played for the jury. See *State v. Knowles,* 247 Ga. 218 (274 SE2d 468) (1981).

4. A review of the record demonstrates that the trial court did not abuse its discretion in allowing certain witnesses for the state to remain in the courtroom after appellants had invoked the rule of sequestration. See generally *Ruffin v. State,* 243 Ga. 95, 96 (2) (252 SE2d 472) (1979); *Hardy v. State,* 245 Ga. 272, 275 (1) (264 SE2d 209) (1980).

5. Over appellant Allison's objection, the state was allowed to introduce evidence of his involvement in a drug smuggling scheme some two years prior to the drug smuggling conspiracy of which he was charged with being a member in the instant case. The trial court

instructed the jury that this evidence was being admitted solely for the limited purpose of showing plan, scheme, motive or bent of mind. The admission of this evidence is enumerated as error.

"Drug cases are no different from any other cases. If the defendant is proven to be the perpetrator of another drug crime and the facts of that crime are sufficiently similar or connected to the facts of the crime charged, the separate crime will be admissible to prove identity, motive, plan, scheme, bent of mind, or course of conduct." *State v. Johnson,* 246 Ga. 654, 655 (272 SE2d 321) (1980). A review of the testimony concerning appellant Allison's prior drug smuggling activities demonstrates that it comes within the above stated exception to the "other crimes" rule. The relevancy of this evidence was not destroyed by the passage of two years. *McNeal v. State,* 228 Ga. 633, 637 (187 SE2d 271) (1972). Accordingly, this enumeration of error is without merit.

6. Appellant Allison urges that it was error to fail to suppress the voice identification testimony of two officers. The contention is that the testimony was based upon the officers' interview with Allison prior to which he was not advised of his Miranda rights and during which he was induced to confess by being offered "the slightest hope of benefit." Code Ann. § 38-411.

A Jackson-Denno hearing was held and the evidence adduced at that hearing authorized the trial court's conclusion that the officers had in fact advised Allison of his Miranda rights before the interview was conducted. See *Dougherty v. State,* 145 Ga. App. 718, 719 (2) (244 SE2d 638) (1978). Assuming without deciding that the officers attempted to induce Allison to confess in violation of Code Ann. § 38-411, it is of no consequence in the instant case. The simple fact is that Allison did *not* confess or make any incriminatory statements or admissions to the officers. Indeed, it appears that all of Allison's statements to the officers were exculpatory and that the interview ended when Allison elected to secure an attorney. What was "incriminating" was Allison's voice, which the officers recognized from the taped telephone calls secured by the wiretap, not his statements made during the interview. It is apparently Allison's position that the officers' voice identification testimony should have been excluded because they did not advise him that securing such incriminating evidence was the ostensible purpose of the interview. The fact that Allison "may have been induced by a mere trick, artifice, or deception" into submitting to the interview at which the incriminatory voice identification was made does not render the officers' testimony inadmissible. See *Hudson v. State,* 153 Ga. 695, 699 (113 SE 519) (1922). The finding of the trial court after the Jackson-Denno hearing that Allison "voluntarily" submitted to the

interview at which the officers obtained the incriminating voice identification evidence was not clearly erroneous. See *Young v. State,* 243 Ga. 546, 548 (3) (255 SE2d 20) (1979). This enumeration of error is without merit.

7. The trial court did not abuse its discretion in allowing the state, after having rested, to reopen its case and to recall two witnesses for further testimony. *Flynt v. State,* 153 Ga. App. 232, 244 (264 SE2d 669) (1980). See *Gregoroff v. State,* 158 Ga. App. 363 (1) (280 SE2d 373) (1981), revd. on other grounds, 248 Ga. 667 (285 SE2d 537) (1982).

8. The indictment went out with the jury without the guilty plea of appellants' co-indictee being concealed. Although appellants' counsel had been given the opportunity to inspect the indictment before it had been sent out with the jury, no issue concerning the existence of the co-indictee's guilty plea thereon was raised until after the jury had returned guilty verdicts against appellants. The trial court did not err in allowing the indictment to go to the jury without excising the guilty plea. *Flowers v. State,* 159 Ga. App. 516 (284 SE2d 32) (1981). Compare *Pope v. State,* 157 Ga. App. 154 (276 SE2d 666) (1981).

9. During the closing argument for the state, appellants interposed an objection and made a motion for mistrial premised upon an alleged impermissible comment by the prosecutor on appellants' failure to testify. The trial court denied the motion for mistrial and gave no curative instructions to the jury to disregard the comment. A review of the transcript demonstrates no error in the trial court's actions. The statement asserted to be an impermissible comment on appellants' right to remain silent was, in fact, a permissible comment on appellants' failure to produce evidence in rebuttal of that produced by the state. See generally *Mahar v. State,* 137 Ga. App. 116, 117 (1) (223 SE2d 204) (1975).

10. Appellants enumerate as error the denial of their motions for a directed verdict of acquittal. "It is axiomatic that a conspiracy is 'a corrupt agreement between two or more persons to do an unlawful act . . .' [cit.]; that its existence 'may be shown by either direct or circumstantial evidence' [cit]; and that 'After the fact of conspiracy shall be proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all.' [Cit.] It is required for a conviction in a felony case that the testimony of an accomplice must be corroborated. [Cit.] However, 'It is not required that this corroboration shall of itself be sufficient to warrant a verdict, or that the testimony of the accomplice be corroborated in every material particular. (Cits.) Slight evidence from an extraneous source identifying the accused as

a participator in the criminal act will support a verdict. (Cits.) The sufficiency of the corroboration . . . is peculiarly a matter for the jury to determine. If the verdict is founded on slight evidence of corroboration *connecting* the defendant with the crime, it can not be said, as a matter of law, that the verdict is contrary to the evidence.' [Cit.] Yet, in order 'to sustain a conviction in a felony case upon the testimony of an accomplice, there must be corroborating facts or circumstances, which, in themselves and, *independently* of the testimony of the accomplice, directly connect the defendant with the crime, or lead to the inference that he is guilty, and more than sufficient to merely cast on the defendant a grave suspicion of guilt.' [Cits.]" *Caldwell v. State,* 227 Ga. 703, 706 (182 SE2d 789) (1971).

The application of the aforesaid principles of law to the evidence in the instant case demonstrates no error in the denial of appellants' motions for a directed verdict of acquittal. The existence of a drug smuggling conspiracy and appellants' membership therein was shown by direct evidence, the testimony of an unindicted coconspirator. This direct testimony was sufficiently corroborated in the instant case. See *Mitchell v. State,* 202 Ga. 247, 248 (3) (42 SE2d 767) (1947).

With regard to appellant Allison, the corroborating evidence was in the form of his own taped conversations secured from the wiretap. This evidence from an "extraneous source," the wiretap tapes of appellant Allison's own statements, while perhaps not sufficient standing alone to demonstrate Allison's participation in the conspiracy, was sufficient corroborative evidence connecting him with the drug smuggling conspiracy. "Conduct of the defendant, before, during, and after the commission of a crime may be considered by a jury in establishing his participation to determine whether such conduct was sufficient corroboration of the testimony of an accomplice to sustain conviction. [Cit.]" *Stanford v. State,* 157 Ga. App. 633, 634 (278 SE2d 175) (1981).

In the case of appellant Gilstrap, not only was the testimony of the co-conspirator corroborated by Gilstrap's own conversations on the tapes, but also by the testimony of an undercover agent who directly implicated Gilstrap as a member of the drug smuggling conspiracy.

Once a prima facie showing of the existence of a drug smuggling conspiracy and of appellants' membership therein had been established, the door was then open under Code Ann. § 38-306 for the admission into evidence of the declarations of the other conspirators made during the pendency of the conspiracy, including the wiretap conversations to which appellants had not been parties. See *Mitchell v. State,* 202 Ga. 247 (2, 3), supra. We find no reversible error with

regard to the procedure under which the admissibility of the taped conversations was determined and the order of proof which the trial court permitted the state to follow in presenting that evidence. "While it may generally be the better practice to require a prima facie case of conspiracy first to be made, before admitting evidence of the acts and declarations of one of the alleged conspirators, there is no inflexible rule to that effect. The trial court has some discretion as to the order in which testimony may be introduced; and if a prima facie case of conspiracy is shown from the whole evidence, the admitting of such testimony is not error . . . If sufficient prima facie evidence of a conspiracy is introduced to authorize the admitting of evidence of acts and declarations of one of the alleged conspirators, ultimately it is for the jury to determine whether, from the whole evidence, a conspiracy has been shown; and if they find that none has been established, it is then their duty not to consider the acts and declarations of the supposed co-conspirator which has been admitted, except so far as they may affect him, if he is on trial. [Cit.]" *Coleman v. State,* 141 Ga. 731, 733-734 (82 SE 228) (1914). "In the present case, there was sufficient prima facie evidence of a conspiracy to allow admission of the hearsay testimony . . . concerning declarations made by the other conspirators during the pendency of the criminal project. However, it was for the jury to determine whether the conspiracy was proved beyond a reasonable doubt, and, thus, whether the hearsay testimony . . . was admissible against [appellants.]" *Gunter v. State,* 243 Ga. 651, 659 (256 SE2d 341) (1979).

After a review of the entire record, we find that a rational trior of fact could reasonably have found from the evidence adduced at trial proof of appellants' guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

11. Appellants argue that while the indictment charged a single conspiracy to smuggle drugs into Georgia, the proof at trial showed several unrelated drug conspiracies. Our review of the transcript demonstrates that the evidence authorized a finding that there was but one overall agreement among the conspirators to smuggle drugs into Georgia, an agreement which developed in stages over time and pursuant to which the various conspirators performed different functions in developing and in carrying out the overall drug smuggling objective. See *Price v. State,* 247 Ga. 58, 60-61 (273 SE2d 854) (1981). Accordingly, we find no fatal variance between allegata and probata in the instant case.

12. Lastly, appellants assert that even in the event that no single enumeration of error establishes a sufficient basis for reversing their convictions, the "totality of the circumstances" surrounding those

enumerations warrants the grant of a new trial. " 'Any error shown upon the record must stand or fall on its own merits and is not aided by the accumulative effect of other claims of errors.' " [Cit.]" *Firestone Tire &c. Co. v. Pinyan,* 155 Ga. App. 343, 352 (9) (270 SE2d 883) (1980). Accordingly, this enumeration is without merit.

*Judgments affirmed. Quillian, C. J., and Shulman, P. J., concur.*

DECIDED JUNE 18, 1982 —
REHEARING DENIED JULY 7, 1982 IN CASE NO. 63766 — ▮▮▮▮▮▮

*J. Lee Rose,* for appellant (case no. 63765).
*Mark J. Kadish, Rosalyn S. Kadish,* for appellant (case no. 63766).
*Thomas Charron, District Attorney, Joseph L. Chambers, J. Robert Sparks, Assistant District Attorneys,* for appellee.