### 68453. BLACKSTON v. THE STATE.
(322 SE2d 300)

CARLEY, Judge.

Appellant was tried before a jury and convicted of conspiracy to traffick in more than 2,000 but less than 10,000 pounds of marijuana. Appellant's motion for a new trial was denied and he appeals from the judgment of conviction and sentence entered on the jury verdict.

1. Appellant and eleven others were jointly indicted. He was, however, tried separately. During the course of appellant's trial, the State made an announcement that, on the evening before, one of appellant's co-indictees had agreed to enter a guilty plea and to testify against appellant in exchange for "some mercy."

Over appellant's objection that, on several previous occasions, the co-indictee had been present in the courtroom after the rule of sequestration had been invoked, the trial court allowed the co-indictee to testify. On appeal, appellant asserts that the co-indictee was erroneously allowed to testify after violating the rule of sequestration.

It is doubtful whether the circumstances evince a "violation" of the rule of sequestration. Apparently, the State was totally unaware that the co-indictee would testify until the evening before the announcement. If the State did not know that he would eventually testify, the co-indictee's prior presence in the courtroom would appear to be, at most, a mere "irregularity," rather than a violation of the rule of sequestration. *Bryan v. State*, 148 Ga. App. 428, 430 (3) (251 SE2d 338) (1978).

Moreover, even if the rule were violated, no reversible error would be shown. "In criminal cases, the violation of the rule of sequestration by *any* witness either for the defense or for the prosecu-

tion goes to the credibility rather than to the admissibility of the witness' testimony. [Cits.]" (Emphasis in original.) *Blanchard v. State*, 247 Ga. 415, 417 (276 SE2d 593) (1981).

Appellant further contends that it was incumbent upon the trial court to give curative instructions with specific regard to the credibility of a witness who had violated the rule of sequestration. No such instructions were requested by appellant. The contention that the trial court prevented appellant's counsel from requesting curative instructions is not supported by the record. The co-indictee was in fact subjected to rigorous cross-examination as to his credibility, including cross-examination with specific reference to his presence in the courtroom while other witnesses were testifying. See *McFarland v. State*, 137 Ga. App. 354, 357 (5) (223 SE2d 739) (1976). In the final charge to the jury, the trial court did in fact give instructions as to the credibility of witnesses generally and there is nothing to indicate that appellant ever requested that more explicit instructions be given. *Talbott v. State*, 148 Ga. App. 171, 173 (2) (251 SE2d 126) (1978). There was no error.

2. The name of the co-indictee was not contained in the list of witnesses for the State furnished in accordance with OCGA § 17-7-110. On this basis, appellant urges that the trial court erred in allowing the co-indictee to testify. "When, as in this case, a witness' name is contained in the indictment, a defendant cannot validly contend that he had been surprised or unable to interview the witness in question through lack of knowledge of such witness." *Herring v. State*, 238 Ga. 288, 289 (232 SE2d 826) (1977). See also *Redmond v. State*, 252 Ga. 142 (2) (312 SE2d 315) (1984); *Garvin v. State*, 144 Ga. App. 396, 398 (5) (240 SE2d 925) (1977). The trial court did not err in allowing the co-indictee to testify.

3. Appellant asserts that the testimony of the co-indictee was not corroborated and therefore should have been stricken.

"[T]he testimony of an accomplice must be corroborated by independent evidence as to the identity and participation of the accused which tends to connect the accused with the crime or leads to the inference that he is guilty . . . . [T]he corroborating facts and circumstances must do more than merely cast on the defendant a grave suspicion of guilt." *Birt v. State*, 236 Ga. 815, 825 (225 SE2d 248) (1976). The testimony of the co-indictee in the instant case was corroborated by the testimony of an undercover agent who had infiltrated the conspiracy. According to the agent, he attended a meeting with several participants in the proposed drug transaction, one of whom was appellant's brother. At this meeting, the agent was paid $5,000 for providing a "stash site." Immediately after the agent received the money, appellant's brother made two telephone calls and then announced "let's go." The group left the meeting and drove di-

rectly to the parking lot of a local shopping center. All of the stores were closed and only one vehicle was in the parking lot. Appellant was seated in this vehicle. The vehicle in which the agent was riding pulled up beside the one in which appellant was seated. Appellant got out of his vehicle and approached the other. Appellant then asked his brother if "everything" was ready. Appellant's brother replied that "it was." Appellant's response was that he was "going to go but [would] be waiting on a phone call." The vehicle in which the agent was riding then left the shopping center. After dropping off appellant's brother, the remaining members of the group proceeded to the location where the marijuana was already loaded on a truck. Then the transportation of the marijuana to the arranged stash site began.

"Conduct of the defendant, before, during, and after the commission of a crime may be considered by a jury in establishing his participation to determine whether such conduct was sufficient corroboration of the testimony of an accomplice to sustain a conviction. [Cit.] This may be done by circumstantial as well as direct evidence. [Cit.] 'The sufficiency of the corroboration evidence is peculiarly a matter for the jury to determine. If the verdict is founded on slight evidence of corroboration connecting a defendant with the crime, the verdict is legally sufficient.' [Cits.]" *Stanford v. State*, 157 Ga. App. 633, 634 (278 SE2d 175) (1981). " '[C]onspiracy may be shown by conduct as well as by direct proof [of] express agreement, by inference as well as deduction from conduct which shows common design on the part of persons charged to act together for the accomplishment of the unlawful purpose. [Cits.]' [Cit.]" *Hendrixson v. State*, 167 Ga. App. 517, 518 (306 SE2d 350) (1983). The evidence was sufficient to corroborate the co-indictee's testimony that a conspiracy existed of which appellant was a member.

4. Appellant asserts that hearsay evidence was erroneously admitted pursuant to OCGA § 24-3-5 prior to proof of the fact of conspiracy. OCGA § 24-3-5 provides: "*After the fact of conspiracy is proved*, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." (Emphasis supplied.)

OCGA § 24-3-5 "has been interpreted to allow admission of such declarations even prior to proof of a prima facie case of conspiracy, provided the evidence eventually shows a prima facie case of conspiracy. [Cit.]" *Salmon v. State*, 249 Ga. 785, 786 (294 SE2d 500) (1982). "The order of proof is in the discretion of the judge and there is no error in admitting such declarations if a prima facie case of conspiracy is proved by the state. [Cit.]" *Blalock v. State*, 250 Ga. 441, 442 (298 SE2d 477) (1983).

The co-indictee's testimony was direct evidence of the existence of a conspiracy and of appellant's participation therein. See *Birt v.*

*State*, supra at 823. As discussed in Division 4, the testimony of the undercover agent was independent corroborative evidence as to the existence of a conspiracy and appellant's membership therein. Conspiracy was therefore sufficiently shown so as to withstand a motion for directed verdict of acquittal and thus to authorize the admission of the declarations of members of the conspiracy other than appellant. See generally *Gilstrap v. State*, 162 Ga. App. 841, 845 (10) (292 SE2d 495) (1982); *Hendrixson v. State*, supra.

5. Appellant objected to a portion of the State's closing argument and moved for a mistrial. The motion was denied and no curative instructions were given. On appeal, appellant enumerates as error the denial of his motion for mistrial.

The contested portion of the State's closing argument was, in essence, an assertion that law enforcement officers had performed well, that the State had proved appellant's guilt, and that it was now up to the jury to convict appellant or to "turn him loose." " ' "A solicitor general may argue to the jury the necessity for enforcement of the law and may impress on the jury, with considerable latitude in imagery and illustration, its responsibility in this regard." ' [Cit.]" *Johnson v. State*, 246 Ga. 126, 129 (269 SE2d 18) (1980). Thus, the jury may be exhorted that an acquittal would be tantamount to a failure to support law enforcement officers. See *Minor v. State*, 143 Ga. App. 457 (238 SE2d 582) (1977). See also *Black v. State*, 167 Ga. App. 204, 206 (2) (305 SE2d 837) (1983). The jury may also be informed that it has the ultimate responsibility of deciding whether " 'to turn [a defendant] loose.' " *Brand v. Wofford*, 230 Ga. 750, 754 (9) (199 SE2d 231) (1973). "We find that the remark[s] made by the State in this case [do] not constitute grounds for a mistrial. [Cits.]" *Johnson v. State*, supra at 129.

6. Appellant contends that reversible error occurred when the jury was allowed to have out with it during its deliberations a separate sheet containing guilty pleas entered by two of appellant's co-indictees. The jury obviously saw this document since the guilty verdict against appellant was written thereon. Absent waiver, reversal would be required. *Pope v. State*, 157 Ga. App. 154 (2) (276 SE2d 666) (1981). However, a review of the record indicates that these particular guilty pleas were entered on this separate piece of paper simply because at the time of their entry, the back of the original indictment was filled with guilty pleas of six co-indictees and the guilty verdict against another co-indictee. Before the case against appellant was submitted to the jury, appellant's counsel expressly waived any objection to sending the original indictment out with the jury, stating that "everybody knows about the guilty pleas anyway." Appellant made no objection to the trial court's instruction, during its charge, that the verdict was to be returned "on the back of the indictment."

Because of the circumstances revealed by the record as above set forth, it is obvious that the separate sheet containing the two guilty pleas was part of the indictment referred to by the court in instructing the jury. Appellant has expressly waived any objection to the jury's possession of the indictment and resulting knowledge of all the prior guilty pleas. *Flowers v. State*, 159 Ga. App. 516 (284 SE2d 32) (1981); *Gilstrap v. State*, supra at 845 (8).

*Judgment affirmed. Quillian, P. J., and Birdsong, J., concur.*

DECIDED SEPTEMBER 5, 1984 —
REHEARING DENIED SEPTEMBER 20, 1984 ▮▮▮▮▮▮▮▮

*Patrick T. O'Connor, N. Harvey Weitz,* for appellant.
*J. Lane Johnston, District Attorney,* for appellee.