## S12A1695. YOUNG v. THE STATE.
(738 SE2d 575)

BLACKWELL, Justice.

Marquis Young was tried by a Chatham County jury and convicted of murder and possession of a firearm during the commission of a crime. Young appeals, contending that the trial court erred when it allowed the State to reopen the evidence after closing argument had begun and that he was denied the effective assistance of counsel. Upon our review of the record and briefs, we see no error and affirm.[1]

1. Viewed in the light most favorable to the verdict, the evidence shows that Ramone Bowers was repeatedly and fatally shot with a .40-caliber pistol on East Duffy Street in Savannah on the evening of September 25, 2006. Several witnesses heard gunshots, and they saw the gunman, whom they could not identify, stand on the bumper of a white SUV and shoot down at the victim, who was in front of the SUV. One witness recalled seeing the gunman hold on to the spoiler of the SUV with his right hand as he shot Bowers with a weapon that he fired from his left hand. Fingerprints lifted from the spoiler of that SUV matched fingers on Young's right hand, and Young was shown to be left-handed. In addition, a jailhouse informant testified that Young admitted to shooting Bowers and said that he did so because Bowers had shot at him a few days before. According to the informant, Young said that he jumped on a "car or truck" and shot down at Bowers, who was in front of the vehicle. Young also acknowledged that he might have left his fingerprints on the vehicle when he jumped onto it, the informant said.

Although Young attacked the credibility of the jailhouse informant, we must view the evidence in the light most favorable to the verdict and leave questions of credibility and the resolution of conflicts in the evidence to the jury. As a result, we conclude that the evidence in this case was sufficient to authorize a rational trier of fact to find Young guilty beyond a reasonable doubt of the crimes of which

---

[1] The events that form the basis for the convictions occurred on September 25, 2006. Young was indicted on December 20, 2006 and charged with malice murder, felony murder, and possession of a firearm during the commission of a crime. His trial commenced on March 30, 2010, and the jury returned its verdict on April 1, 2010, finding Young guilty on all counts. Young was sentenced to life imprisonment for malice murder and a consecutive term of five years for possession of a firearm during the commission of a crime. The felony murder verdict was vacated by operation of law. See *Powell v. State*, 291 Ga. 743, n. 1 (733 SE2d 294) (2012). Young filed a motion for new trial on April 9, 2010, and he amended it on May 5, 2011. The trial court denied the motion for new trial as amended on March 19, 2012. Young timely filed his notice of appeal on April 17, 2012, and the case was docketed in this Court for the September 2012 term and submitted for decision on the briefs.

he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also *Talbott v. State*, 148 Ga. App. 171, 173 (1) (251 SE2d 126) (1978).

2. Young contends that the trial court abused its discretion when it allowed the State to reopen the evidence after his lawyer had begun his closing argument. During his closing argument, Young's lawyer pointed out that, although the jailhouse informant testified that Young admitted using a Glock .40-caliber gun to shoot Bowers,[2] the State "could" have known from ballistics testing whether Bowers was shot with a Glock. The State objected, arguing that Young previously had stipulated that the ballistics report concluded that Bowers was killed with bullets fired by a Hi-Point .40-caliber pistol and that the State, therefore, had no reason to present evidence about whether ballistics testing had ruled out the possibility that Bowers was killed with a Glock. The trial court ruled that the State could reopen the evidence so that its ballistics expert could testify about his findings.

Although Young casts his lawyer's statement during closing argument as a challenge to the credibility of the jailhouse informant — not a challenge to the thoroughness or accuracy of the State's ballistics testing — the trial judge also understood Young to be attacking the State's failure to conduct adequate ballistics testing. That was not an unreasonable understanding of the closing argument. And whether to reopen the evidence is a matter that rests within the sound discretion of the trial court. See *Carter v. State*, 263 Ga. 401, 402 (2) (435 SE2d 42) (1993); *Britten v. State*, 221 Ga. 97, 101 (4) (143 SE2d 176) (1965) ("It is within the discretionary power of the court to allow a witness to be sworn after the evidence on both sides has been announced closed and the argument has been commenced . . . .") (citation and punctuation omitted). Here, Young had stipulated that the weapon used to shoot Bowers was a Hi-Point .40-caliber pistol, so the trial court did not abuse its discretion in allowing the State to reopen the evidence after Young's lawyer said that the State "could" have shown through ballistics testing whether the weapon used in the crime was consistent with a different weapon mentioned by the jailhouse informant.

In any event, Young has failed to show that he was harmed by the reopening of the evidence. The ballistics expert's testimony confirmed that the bullets found at the crime scene were consistent with having been fired by a Hi-Point .40-caliber pistol — just as provided

---

[2] The record shows that the informant actually expressed some uncertainty about the type of weapon that Young said he used to shoot Bowers, testifying that it was "[a] Glock 40 or either 40 cal[iber,]" but definitely not the nine millimeter handgun that Young had in his possession when he was arrested.

in the stipulation — not a Glock. So, to the extent that Young's closing argument was an attempt to discredit testimony that the weapon used was a Glock, the testimony of the ballistics expert did just that. See *Childs v. State*, 257 Ga. 243, 255 (18) (357 SE2d 48) (1987).

3. Young also contends that he was deprived at trial of the effective assistance of counsel. To prevail on this claim, Young must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984). To show that the performance of his lawyer was deficient, Young must prove that his lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. See id. at 687-688 (III) (A). See also *Kimmelman v. Morrison*, 477 U. S. 365, 381 (II) (C) (106 SC 2574, 91 LE2d 305) (1986). And to show that he was prejudiced by the performance of his lawyer, Young must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694 (III) (B). See also *Williams v. Taylor*, 529 U. S. 362, 391 (III) (120 SC 1495, 146 LE2d 389) (2000). This burden, although not impossible to carry, is a heavy one. See *Kimmelman*, 477 U. S. at 382 (II) (C). We conclude that Young has failed to carry his burden.

(a) First, Young claims that his trial lawyer was ineffective because he failed to object on hearsay grounds when a witness was allowed to read into the record a letter that the witness had received from the jailhouse informant. In the letter, the informant claimed that Young confessed to the murder and asked the recipient of the letter to contact the district attorney. The informant also expressed his hope that someone from law enforcement would "come see [him] ASAP" and that he would be released from jail if he provided the information that he had gathered while he had been incarcerated.[3]

When asked about this alleged deficiency in his representation at the hearing on Young's motion for new trial, Young's trial lawyer said that he knew that the jailhouse informant was going to testify at trial, and he wanted to have the contents of the letter introduced early so that he would "have a chance to defuse [the informant's claims] on

---

[3] In addition, the letter states that the informant had heard confessions from two other inmates about crimes that they had committed. The informant requested that the recipient of the letter contact the detective investigating those crimes so that the informant could provide information about those confessions to him. The letter states that "hopefully [the detective] can get to the district attorney for me to get my case thrown out."

more than one occasion. . . ." Consistent with this approach, Young's lawyer later cross-examined the jailhouse informant about his motivations in providing information on confessions he had allegedly heard and his ability "to get a lot of confessions out of people while [he was] in the jail." This was a reasonable trial strategy, and the lawyer was not deficient for pursuing it. See *Wright v. State*, 285 Ga. 57, 62 (4) (a) (673 SE2d 249) (2009).

(b) Young also claims that his trial lawyer should not have allowed the letter written by the jailhouse informant to go out with the jury during its deliberations, which, Young asserts, violated the continuing witness rule. See *Johnson v. State*, 244 Ga. 295, 296-297 (3) (260 SE2d 23) (1979); *Adams v. State*, 284 Ga. App. 534, 536-537 (2) (644 SE2d 426) (2007). But here, the letter was not the reduction to writing of an oral statement, nor was it a written statement provided in lieu of testimony. Instead, the letter was original documentary evidence of the attempts by the informant to provide information to the district attorney. See *Davis v. State*, 285 Ga. 343, 348 (8) (676 SE2d 215) (2009). As a result, the performance of Young's trial lawyer was not deficient when he failed to object to the letter going out with the jury.

Moreover, even if it were otherwise, Young has failed to establish that there is a reasonable probability that the outcome of the trial would have been different if his lawyer had made a continuing witness objection before the letter was provided to the jury. The contents of the letter were not particularly harmful to Young. As opposed to the testimony of the jailhouse informant, which included details of the confession, such as Young's admission to having shot down at Bowers after jumping onto a vehicle, the letter did not contain specific information about any of the confessions that the informant claimed to have heard. Instead, the letter is focused on the informant's dissatisfaction with his incarceration and his insistence that someone from law enforcement come see him so that he could provide the information he had and be released. Because the letter only reenforced Young's theory that the informant was not credible, and Young has not pointed to anything in the letter that could have changed the outcome of the trial, he has failed to satisfy the second prong of *Strickland*. See *Zellars v. State*, 278 Ga. 481, 484 (6) (a) (604 SE2d 147) (2004).

(c) Finally,[4] Young asserts that his trial lawyer provided constitutionally ineffective representation by failing to move to redact the

---

[4] Young also claims that his trial lawyer's performance was deficient to the extent that he failed to properly move for a mistrial after the trial court announced that it would allow the

portion of the autopsy report that said, "MANNER OF DEATH: Homicide[,]" arguing that this opinion "invade[d] the fact-finding province of the jury . . . ." See *Medlock v. State*, 263 Ga. 246, 248 (3) (430 SE2d 754) (1993).[5] But the ultimate issue for the jury in this case was not whether Bowers was the victim of a homicide, because it was undisputed that someone killed Bowers by shooting him 11 times with a .40-caliber pistol. Instead, the ultimate issue for the jury was whether Young was the killer, and the autopsy report set out no opinion on that. See *Mangrum v. State*, 285 Ga. 676, 679 (4) (681 SE2d 130) (2009). As a result, Young's lawyer did not provide deficient performance in this regard.

*Judgment affirmed. All the Justices concur.*

## DECIDED FEBRUARY 18, 2013.

*Steven L. Sparger*, for appellant.

*Larry Chisolm, District Attorney, Nancy Grey R. Brimberry, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Brittany N. Jones, Assistant Attorney General*, for appellee.

---

State to reopen the evidence (as discussed above in Division 2). This claim, however, is not supported by the record. Instead, the record shows that Young's trial lawyer moved for a mistrial immediately after the court announced that it would allow the State to reopen the evidence, he renewed that motion prior to the proffer of the ballistics expert, and he moved for a mistrial for a third time after the proffer and before the testimony of the ballistics expert. Young's trial lawyer secured a ruling on each of these motions, and his performance was not deficient in this regard.

[5] Young's trial commenced before January 1, 2013, so our new Evidence Code does not apply. See Ga. L. 2011, pp. 99, 214, § 101.