**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

April 26, 2024

# In the Court of Appeals of Georgia

A24A0533. DAVIS v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Richard Davis on four counts of child molestation and one count each of aggravated sexual battery, attempted aggravated sexual battery, rape incest, enticing a child for indecent purposes, sexual battery, sexual exploitation of children, and influencing a witness. Davis now appeals, arguing the trial court erred in denying his claim that his trial counsel rendered ineffective assistance when he failed to object to numerous notes going out with the jury in an alleged violation of the continuing-witness rule. For the following reasons, we affirm his convictions and the denial of his motion for new trial.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that in 2010, Davis began living with his adult daughter's family, which included his granddaughter, T. M. At some point in 2015, when T. M. was 15 years old and in the ninth grade, Davis started sexually abusing her, rubbing his clothed penis against her leg and touching her breasts on several occasions Around that same time, Davis also asked T. M. if he could lick her vagina, but she refused. When T. M. confronted him about the abuse, Davis responded, "I can't get over myself" and "I have a jonesing." Davis also gave T. M. handwritten notes, expressing his love and telling her how attractive she was to him.

Later, the abuse escalated, and one night when T. M. was cleaning Davis's bedroom (which shared a wall with her bedroom), Davis pulled off T. M.'s pants and penetrated her vagina with his penis before she could push him off of her. In another incident, T. M. went to Davis's sister's home to dog-sit for her while she was out of town, and Davis accompanied her there. Later that evening, T. M. woke up to find Davis placing his fingers in her vagina. And when T. M. pretended to remain asleep, Davis told her he did not believe she was sleeping but then cursed at her and left the

---

[1] *See, e.g.*, *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018).

room. That same night, however, Davis returned to the bedroom where T. M. was sleeping and again tried to place his fingers in her vagina; but this time he was unsuccessful.

While he was sexually abusing T. M., Davis continued writing her notes professing his love for her. But Davis also wrote her notes containing sexually inappropriate comments, including pleas imploring her to let him lick her vagina and claims that he would stop bothering her if she allowed him to do so. Davis also gave T. M. notes threatening to tell her mother that she was behaving inappropriately around her younger sibling or that she was having her boyfriend or friends come over to the house while her mother was at work.

Finally, in June 2017, after Davis sent a text message to T. M.'s boyfriend warning him to stay away from her and another to her mother, claiming T. M. was allowing her boyfriend to come over to their house, T. M. called her mother at work and told her she was tired of Davis blackmailing her. T. M.'s mother could tell that her daughter was extremely upset, so she went home to talk to her, at which point T. M. disclosed that Davis had been sexually abusing her for the last two years. In doing so, T. M. showed her mother several of the notes Davis had written to her. And that

same day, T. M.'s mother called law enforcement, who began investigating the matter and arrested Davis. A few days later, as T. M.'s mother was cleaning out Davis's bedroom, she discovered that two holes had been cut into the wall of his room, providing a view into T. M.'s bedroom. She immediately reported this discovery to law enforcement.

Thereafter, the State charged Davis, via indictment, with four counts of child molestation, three counts of possession of methamphetamine, and one count each of aggravated sexual battery, attempted aggravated sexual battery, rape, incest, enticing a child for indecent purposes, sexual battery, sexual exploitation of children, influencing a witness, and possession of drug-related objects. The case eventually proceeded to trial,[2] during which the State presented the foregoing evidence. Additionally, the State admitted Davis's notes to T. M. into evidence and had her read many of them while testifying. And in fact, the notes also went out with the jury during its deliberations.

At the conclusion of the trial, the jury found Davis guilty on all charges. Thereafter, Davis obtained new counsel and filed a motion for new trial, arguing, *inter*

---

[2] Prior to trial, Davis pleaded guilty to the four drug-related charges.

*alia*, that his trial counsel rendered ineffective assistance. The trial court held a hearing on the matter, during which Davis's trial counsel testified. And after both Davis and the State presented their arguments, the trial court ruled from the bench that it was denying Davis's motion, affirming that ruling in a written order a few weeks later. This appeal follows.

In his sole enumeration of error, Davis contends the trial court erred in denying his claim that his trial counsel rendered ineffective assistance by failing to object to the numerous handwritten notes going out with the jury, arguing this violated the continuing-witness rule. We disagree.

In evaluating Davis's claims of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*,[3] which requires him to show that his trial counsel's performance was "deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[4] Importantly, should a defendant

---

[3] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[4] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Strickland*, 466 U.S. at 687 (III); *Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

"fail to meet his burden on one prong of this two-prong test, we need not review the other prong."[5] As a result, this burden, though not impossible to meet, is "a heavy one."[6] In addition, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.[7] Significantly, the reasonableness of counsel's conduct is "examined from counsel's perspective at the time of trial and under the particular circumstances of the case[.]"[8] And decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if "they were so patently unreasonable that no competent attorney would have followed such a course."[9] So, unless clearly erroneous, this Court will "uphold a trial court's factual determinations

---

[5] *McAllister*, 351 Ga. App. at 93 (6); *accord Gomez v. State*, 300 Ga. 571, 573 (797 SE2d 478) (2017); *Lawson v. State*, 365 Ga. App. 87, 95 (3) (877 SE2d 616) (2022).

[6] *Jones v. State*, 292 Ga. 593, 599 (7) (740 SE2d 147) (2013).

[7] *Chapman*, 273 Ga. at 350 (2); *see Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

[8] *Lockhart v. State*, 298 Ga. 384, 385 (2) (782 SE2d 245) (2016); *accord Lawson*, 365 Ga. App. at 95 (3).

[9] *Lockhart*, 298 Ga. at 385 (2); *accord Lawson*, 365 Ga. App. at 95 (3).

with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de novo*."[10] With these guiding principles in mind, we turn to Davis's claim of error.

Specifically, Davis argues his counsel rendered ineffective assistance by failing to lodge a continuing-witness-rule objection to the handwritten notes going out with the jury during its deliberations. And here in Georgia, the continuing-witness-rule objection—which was unaffected by the enactment of the new Evidence Code[11]—is based on the notion that

---

[10] *Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014); *accord Duncan v. State*, 346 Ga. App. 777, 783 (2) (815 SE2d 294) (2018); *see Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014) (holding that "[i]n reviewing a claim of ineffective assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but we review a trial court's legal conclusions de novo").

[11] *Rainwater v. State*, 300 Ga. 800, 802 (2) n.3 (797 SE2d 889) (2017). *But see* Ronald L. Carlson & Michael Scott Carlson, CARLSON ON EVIDENCE 107 (8th ed. 2023) (noting that "[t]o the extent the 'continuing witness rule' serves as a rule of exclusion, it may also need to be reconsidered in light of Georgia Rule of Evidence 402" and citing in support of this proposition *State v. Orr*, 305 Ga. 729, 738 (3) (827 SE2d 892) (2019), in which the Supreme Court of Georgia acknowledged "Georgia's Rule 402 was modeled on Federal Rule of Evidence 402, which was designed to "'wipe[ ] the slate clean'" of judicially created limitations on the admissibility of relevant evidence, replacing them with new, codified rules of exclusion").

written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once.[12]

Typically, the types of documents that "have been held subject to the rule include affidavits, depositions, written confessions, statements, and dying declarations."[13] But importantly, the continuing-witness rule is "inapplicable where the document at issue is original documentary evidence or [when] the document is non-testimonial in nature because it was not a reduction of or substitute for a person's oral statements or testimony."[14]

---

[12] *Rainwater*, 300 Ga. at 803 (2) (punctuation omitted). ; *accord Davis v. State*, 285 Ga. 343, 348 (8) (676 SE2d 215) (2009); *Rijal v. State*, 367 Ga. App. 703, 714 (3) (b) (iii) (888 SE2d 272) (2023).

[13] *Rainwater*, 300 Ga. at 803 (2) (punctuation omitted); *accord Davis*, 285 Ga. at 348 (8).

[14] *Adams v. State*, 344 Ga. App. 159, 166 (3) (809 SE2d 87) (2017) (punctuation omitted); *see Moore v. State*, 311 Ga. 506, 511 (4) (858 SE2d 676) (2021) (explaining that "the continuing witness rule is directed at written testimony that is heard by the jury when read from the witness stand").

And here, Davis's handwritten notes to T. M. were "not the reduction to writing of an oral statement, nor a written statement provided in lieu of testimony."[15] Rather, they were "original documentary evidence."[16] Indeed, the challenged exhibits were "not written *testimony* and did not derive their evidentiary value solely from the credibility of their makers."[17] To the contrary, they were "original documentary evidence, and were properly allowed to go out with the jury."[18] Consequently, because the trial court "properly would have overruled a continuing witness objection, trial counsel was not deficient for failing to raise such an objection, and thus was not ineffective."[19]

---

[15] *Keller v. State*, 308 Ga. 492, 506 (9) (842 SE2d 22) (2020) (punctuation omitted); *accord Young v. State*, 292 Ga. 443, 446 (3) (b) (738 SE2d 575) (2013).

[16] *Keller*, 308 Ga. at 506 (9) (punctuation omitted); *accord Young*, 292 Ga. at 446 (3) (b).

[17] *Keller*, 308 Ga. at 506 (9) (punctuation omitted) (emphasis supplied).

[18] *Id.* (punctuation omitted).

[19] *Robinson v. State*, 308 Ga. 543, 554 (3) (a) (842 SE2d 54) (2020); *see Clarke v. State*, 308 Ga. 630, 636-37 (4) (842 SE2d 863) (2020) (holding that the continuing-witness rule did not apply and thus did not preclude trial court from allowing printouts of text messages between defendant and victim and between victim and child of victim and defendant to be sent out with jury at commencement of its deliberations); *Keller*, 308 Ga. at 505-06 (9) (explaining that trial court did not violate the continuing-witness rule by allowing defendant's text messages and internet searches to go out with the

But even if we assumed for the sake of argument that the notes could have been subject to a continuing-witness-rule objection, Davis still falls well short of demonstrating that his trial counsel provided ineffective assistance. Indeed, at the motion-for-new-trial hearing, Davis's trial counsel testified that he was familiar with the continuing-witness rule and did not think it applied to his client's notes to T. M. Counsel also testified that part of his defense strategy was to cast doubt on whether Davis actually wrote the notes because (1) some of them appeared to have different handwriting, and (2) the State did not present any expert testimony confirming that the handwriting was his, but instead only relied on T. M. and the mother's testimony in that regard. Given these circumstances, Davis failed to establish that his trial counsel's strategic decision on this issue was unreasonable. In fact, during its deliberations, the jury sent a question to the trial court, noting that some of the notes appeared to have different handwriting and asking if T. M. and the mother had

---

jury in deliberations); *Young*, 292 Ga. at 446 (3) (b) (holding informant's letter could go out with jury because "the letter was not the reduction to writing of an oral statement, nor was it a written statement provided in lieu of testimony"); *Bollinger v. State*, 272 Ga. App. 688, 692 (2) (613 SE2d 209) (2005) (concluding that letters were not written testimony and thus did not violate continuing-witness rule).

testified that the handwriting was indeed Davis's.[20] Accordingly, Davis has not demonstrated that his trial counsel's performance was deficient, and the trial court did not err in denying his ineffective-assistance claim.[21]

For all these reasons, we affirm Davis's convictions and the denial of his motion for new trial.

*Judgment affirmed. Brown and Padgett, JJ., concur.*

---

[20] The trial court properly responded that the jury was to rely on its own recollection as to the testimony. *See Hill v. State*, 310 Ga. 180, 188 (4) (850 SE2d 110) (2020) (noting trial court's instruction that "[i]t is the duty of each juror to recall the evidence" was proper).

[21] *See Patarozzi v. State*, 358 Ga. App. 675, 680-81 (856 SE2d 51) (2021) (holding that even if arrest warrant was testimonial and subject to continuing-witness rule, trial counsel's decision not to object to the arrest warrant going to the jury because he believed it showed that such was the only evidence State had was reasonable trial strategy); *Jones v. State*, 358 Ga. App. 584, 588 (3) (b) (855 SE2d 761) (2021) (explaining that trial counsel's decision not to object to written statements going out with the jury during deliberations in violation of the continuing-witness rule because the statements impeached State's key witness was reasonable trial strategy and did not constitute ineffective assistance).