**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 6, 2013**

# In the Court of Appeals of Georgia

A13A0911. ELLIS v. THE STATE.

BARNES, Presiding Judge.

Eugene Ellis appeals from the denial of his motion for new trial following his convictions for aggravated sexual battery, five counts of sexual battery, and six counts of sexual assault against a patient in a hospital. On appeal, Ellis contends that the evidence was insufficient to sustain his convictions, and that the trial court misinterpreted the definition of "supervisory authority" pursuant to OCGA § 16-6-5.1 in its instruction to the jury. Following our review, we affirm.

On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. An appellate court does not weigh the evidence or judge the credibility of the witnesses but only determines whether the evidence to convict is sufficient under the standard of *Jackson v. Virginia*, [443 U. S. 307 (99

SC 2781, 61 LE2d 560) (1979).] Conflicts in the testimony of the witnesses . . . are a matter of credibility for the jury to resolve. So long as there is some competent evidence, even though contradicted, to support each element of the State's case, the jury's verdict will be upheld.

*Reeves v. State*, 244 Ga. App. 15, 17 (1) (a) (534 SE2d 179) (2000).

So viewed, the evidence demonstrates that on May 12, 2007, an officer with the City of Marietta Police Department responded to a call at Kennestone Hospital in response to an alleged sexual assault. The victim, A. S., who was from Illinois, was visiting family when she became ill and was admitted to the hospital. She told the officer that when Ellis, her respiratory therapist, had come into her room to check her breathing, he asked her to roll over, then "penetrated her vagina with his fingers." A. S. testified that Ellis had then asked her if "it . . . was good" and that she did not respond but "started crying" and lay there "in shock." After speaking with Ellis' supervisor, the officer made a report of the incident and turned the case over to a detective. The detective later interviewed A. S. and Ellis, who denied the encounter, and based on her investigation, the detective closed the case for lack of evidence.

On June 21, 2007, a different officer responded to a call from T. S., another patient at Kennestone Hospital. T. S. had been admitted to the hospital after an

2

asthma attack, and she had been receiving breathing treatments during her week-long stay. That morning, Ellis came into her room to give her a breathing treatment. As part of the treatment, he beat on her back, then began massaging her back, side and bottom. T. S. told the officer that Ellis made her feel uncomfortable, and that he told her she had a "very nice body" and other things that "[got] him turned on." Later that day, she told her mother about the incident, who then reported Ellis to a nurse. The nurse called Ellis to T. S.'s room, and Ellis told T. S. that there had been a misunderstanding. The officer talked with a hospital security officer, who told him that there was a similar incident on file involving Ellis.

The same detective who investigated the earlier complaint interviewed T. S. She told the detective that during her respiratory therapy, Ellis had massaged the sides of her breasts and her legs and had put his hands under her shorts, rubbed her "butt . . . [and] spread [her] butt cheeks." Ellis also asked her if she "like[d] it." T. S. testified that the only physical contact she normally had with other physical therapists was a "cupping percussive exercise" that involved patting her back. She testified that she had never experienced a respiratory therapist massaging her or touching her breast, vagina, inner thighs and buttocks as part of her therapy.

3

On July 26, 2007, L. F. contacted the same detective. She told the detective that in May of 2006, she had been admitted to Kennestone for asthma and diabetes, and that while Ellis was performing a cupping percussive treatment he had touched her breasts and buttocks. She told the detective that she was shocked because Ellis had treated her before, but had never acted inappropriately. L. F. recalled that she was admitted to the hospital again in May or June of 2007. She awoke to find Ellis in her room and when he started to perform a procedure on her, she told him to leave. Instead of leaving, Ellis tried to "shush" her, touched her breast, and "kept trying to touch [her]." She contacted the detective when she was released from the hospital.[1]

1. Ellis first contends that the trial judge erred in charging the jury on supervisory authority. He argues that the trial court's definition misinterpreted the statute and failed to provide the jury with appropriate guidelines necessary to reach its verdict. This enumeration is meritless.

The trial court charged the jury that "supervisory authority means the power to direct compliance," using the language from *Wilson v. State*, 270 Ga. App. 311, 313 (2) (b) (605 SE2d 921) (2004). Ellis complains that the definition was incomplete

_____

[1]After a televised news report aired, two other women came forward with claims against Ellis, but he was acquitted of all charges related to those women.

because it did not define supervisory authority as "the power to direct and enforce compliance" as set forth in *Randolph v. State*, 269 Ga. 147, 150 (496 SE2d 258) (1998).

We first note that Ellis did not except to the charge when it was given to him before the jury was charged and also responded that he had no exceptions after the charge was given. Therefore, we review this contention only for plain error. See *State v. Kelly*, 290 Ga. 29, 31 (1) (718 SE2d 232) (2011); OCGA § 17-8-58 (b).[2] Thus, we must determine whether there is an error that has not been affirmatively waived, is clear and obvious, affects the defendant's substantial rights, and "seriously affects the fairness, integrity or public reputation" of the judicial proceedings. *Kelly*, 290 Ga. at 33 (2) (a).

OCGA § 16-6-5.1 (b) (4) provides that:

A person who has supervisory or disciplinary authority over another individual commits sexual assault when that person . . . [i]s an employee or agent of a hospital and engages in sexual contact with such other

---

[2] OCGA § 17-8-58 (b) provides that: "Failure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention as provided in subsection (a) of this Code section."

5

individual who the actor knew or should have known is a patient or is being detained in the same hospital.

In this case, Ellis was charged with having supervisory authority over the victims rather than both supervisory and disciplinary authority. The statute clearly contemplates two distinct types of authority. One may have disciplinary or supervisory authority, or as noted in *Randolph*, both types of authority. There, our Supreme Court defined "supervisory *and* disciplinary authority," in the conjunctive, as "the power to direct and to enforce compliance." Id. The Court also defined "supervisory … authority," in the disjunctive, as "the power to direct … compliance." Id; see *Wilson v. State*, 270 Ga. App. at 313.

Here, the trial court did not err in its charge by providing the jury with only the definition of supervisory authority set forth in *Randolph* and *Wilson*. Ellis was indicted for sexual assault against a patient in a hospital (OCGA § 16-5-5.1) for engaging in sexual contact while the victim was a patient in the hospital and while he had "supervisory authority" over the victims. Contrary to his assertions otherwise, the language in *Randolph* that defined disciplinary authority was not indicated in the case, and thus the trial court did not err in its charge. See *State v. Johnson*, 280 Ga.

6

511, 513 (630 SE2d 377) (2006) (a trial court is not required to give a charge that is not adjusted to the evidence).

2. In a related enumeration of error, Ellis contends that the trial court erred in denying his motion for directed verdict because the evidence was insufficient to show that he had supervisory authority over the patient-victims, as defined by *Randolph,* 269 Ga. at 150. He maintains that the evidence does not demonstrate that he had the power over the victims to "direct and *enforce* compliance," and thus, his convictions pursuant to OCGA § 16-6-5.1– counts 10, 11, 12, 15, 16, 17– cannot be sustained. Because *Randolph* is distinguishable for the reasons discussed in Division 1, the enumeration is meritless, as Ellis was not indicted based on his supervisory *and* disciplinary authority over the victims, only his supervisory authority.

3. Ellis also contends that regardless of the definition, there is also no evidence that as a respiratory therapist he had supervisory power over his patients and could then direct compliance from them. He asserts that the trial court erred in denying his motion for directed verdict on this basis. We do not agree.

The evidence demonstrated that Ellis had the requisite supervisory authority over the patients he treated sufficient to sustain his convictions under OCGA § 16-6-5.1 (b) (4). According to testimony from his supervisor, as a respiratory therapist,

7

Ellis assessed the patients, decided what treatments would be used per certain protocols, and directed the patients while the treatments were performed. In performing his duties, he had them, among other things, blow into a tube, breathe through a mask, sit up, lean over, or turn onto their side. Unlike the defendant in *Wilson,* 270 Ga. App. at 313 (2) (b), who as a certified nursing assistant held no supervisory authority over the patients in performing his duties which consisted of cleaning up after incontinence and looking after their general needs, Ellis directly supervised the respiratory treatments based on the individual patients' needs, physician's orders, and protocol.

Moreover, although Ellis contends that the testimony of the victims was unreliable and inconsistent, as noted before, we do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979); *Groves v. State*, 263 Ga. App. 828, 830 (2) (590 SE2d 136) (2003). The evidence in this case was sufficient to meet that standard.

4. We also find the evidence sufficient to sustain the remaining convictions for aggravated sexual battery and sexual battery. "It constitutes an act of aggravated

8

sexual battery for a person to penetrate intentionally and without consent the sexual organ of another with his finger or other foreign object." *Hendrix v. State,* 230 Ga. App. 604, 607 (4) (497 SE2d 236) (1997); see also OCGA § 16-6-22.2 (b). A. S.'s testimony that Ellis put his finger inside her vagina supports the aggravated sexual battery conviction. Similarly, "a person commits the offense of sexual battery when he intentionally makes physical contact with the [genital area and the breasts of a female] without the consent of that person." OCGA § 16-6-22.1 (a) and (b). The evidence that he touched the breast, buttocks and genital area of the victims supported Ellis' convictions for these charges.

*Judgment affirmed. Miller and Ray, JJ., concur*.