**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 21, 2014**

# In the Court of Appeals of Georgia

A14A1374. JACKSON v. THE STATE.

BOGGS, Judge.

A jury found Gregory Leon Jackson, Jr. guilty on one count of aggravated child molestation, three counts of child molestation, and one count of sexual battery (as a lesser-included offense of child molestation). Following the denial of his second amended motion for new trial, Jackson appeals, citing multiple claims of error, including several grounds of ineffective assistance of trial counsel. For the following reasons, we affirm.

1. Jackson argues that the State used its peremptory strikes to remove prospective African-American jurors in a racially discriminatory manner. Jackson complains specifically about the State's striking of Juror #8 and Juror #20.[1]

---

[1] We note that voir dire is not a part of the trial transcript here on appeal. The transcript contains only the colloquy following Jackson's *Batson* motion.

The United States Supreme Court in *Batson v. Kentucky*, 476 U. S. 79 (106 SCt 1712, 90 SE2d 69) (1986),

> established a three-step process for evaluating claims of racial discrimination in the use of peremptory strikes: (1) the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven [the proponent's] discriminatory intent . . . At *Batson* step two, the proponent of the strike need only articulate a facially race-neutral reason for the strike. Step two does not demand an explanation that is persuasive, or even plausible. At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

(Citation and punctuation omitted.) *Heard v. State*, 295 Ga. 559, 556 (3) (761 SE2d 314) (2014). "We review the trial court's denial of the *Batson* motion under a clearly erroneous standard." (Citation omitted.) *Johnson v. State*, 266 Ga. 775, 777 (4) (470 SE2d 637) (1996).

Jackson established a prima facie showing of discrimination by demonstrating that the State used its strikes to remove five African-American members of the jury panel. He presents argument with regard to two of those removed. The State

2

explained that it struck Juror #8 because "[h]e was single. He doesn't have any children. He's young. We didn't have a lot of information about him . . . And pretty much watching him, most of the time he was disinterested in what was going on and not paying attention. So we struck him for that." Jackson argues that because the State struck this juror based upon the prosecutor's observation, and the trial court made no findings regarding the juror's demeanor, there is nothing in the record to support the State's proffered reason for the strike. But the record reveals that the State also struck this juror because he had no children, and explained in striking another juror for the same reason that "since we're dealing with children here, we wanted somebody that had at least some kind of dealing with children." The Georgia Supreme Court has held that this explanation is race-neutral, *Smith v. State*, 264 Ga. 449, 452 (3) (448 SE2d 179) (1994), and we must defer to trial court's conclusion that the State overcame the prima facie case of discrimination. See *Floyd v. State*, 281 Ga. App. 72, 73-74 (635 SE2d 366) (2006).

Jackson also complains about the State's explanation for striking Juror #20:

his wife was an OB/GYN, and since we don't have any specific evidence of any injury in this case, I don't know what knowledge he would have with his wife, OB/GYN, so we struck him . . . [w]e don't have any knowledge what he knows about OB/GYN from his wife and

3

injuries from rape cases or child molestation cases, so we wanted to strike him because there's no injuries that we'd show in this one.

Jackson asserts that this explanation is vague and could be used to strike anyone. But the "basis for a peremptory strike need not make sense or be persuasive; it must only be race[-]neutral and free from discriminatory intent." (Citation and footnote omitted.) *Hodge v. State*, 287 Ga. App. 750, 751 (1) (652 SE2d 634) (2007) (trial court authorized to find prosecutor's explanation regarding juror's spouse's unemployment met race-neutral requirement). Because this explanation was not based upon the race of the juror, the trial court did not clearly err in concluding that the State's proffered reason was race-neutral. See id.

2. Jackson contends that the evidence is insufficient to sustain his convictions. We disagree.

> On appeal of a criminal conviction, this Court's duty is to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). The appellant no longer enjoys the presumption of innocence. Moreover, the Court does not re-weigh the evidence or resolve conflicts in testimony, but rather defers to the jury's assessment of the weight and credibility of the evidence.

4

(Citation and punctuation omitted.) *Maurer v. State*, 320 Ga. App. 585, 587-588 (1) (740 SE2d 318) (2013).

Construed in favor of the verdict, the evidence showed that the first victim S. C., and her younger sister T. D., lived with their adoptive mother and other siblings. Jackson, the mother's adult biological son, had lived with the family, moved out of the home when S. C. was 14 years old, but would often stay overnight on Sundays and Fridays. S. C. testified that Jackson began touching her breasts when she was 13 years old, that he later began touching her "below [her] pants," and then progressed to putting his penis in her mouth and putting "his penis inside of [her]" on more than one occasion. S. C. explained that this activity took place during the day while everyone else in the house was downstairs. She stated further that Jackson told her not to tell anyone.

S. C. eventually wrote a letter to her mother. She testified that she wrote the letter because she "didn't want [Jackson] to come back over there." The letter, admitted into evidence and read by the victim, stated:

> Every time [Jackson] come over here to spend the night it started when
> we first started going to [H]oward Johnson. [H]e started touching me in
> a bad way then he started forcing me to do things after I said no. Then
> he [ ] me not to tell you [. . .] He do [sic] it every time he come [sic] over

5

here. That's why I don't want he [sic] over here. That's y [sic] he won't [sic] to spend the night all the time. [Y] [sic] I didn't tell you because I think you will fuse [sic] at me.

After reading S. C.'s letter, the mother questioned her other daughters. After first denying that Jackson touched her inappropriately, T. C. admitted to her mother that Jackson touched her breasts. She testified that this occurred only once when she was about 10 years old, and that Jackson told her not to tell anyone. T. C. explained further that on one occasion she saw Jackson go into S. C.'s room with S. C. and shut the door.

The mother testified that around the time S. C. gave her the letter, S. C. had "seemed very angry a lot of the times, very angry. And she started getting in trouble at school. She wouldn't do her work at school like the teachers would tell her." The mother explained further that S. C. "would just lie about different things. Just a whole lot of stuff was going on, and she got in fights – well, almost fights . . . arguments with children, so much so that I had to go to the school several times."

S. C. was interviewed by a counselor at a children's advocacy center. The counselor did not provide details of her conversation with S. C., testifying only that S. C. told her "exactly what Mr. Jackson had done to her."

Jackson denied any wrongdoing and agreed to take a polygraph examination. The examiner testified that he concluded that Jackson was being deceptive when denying that he molested S. C.[2]

Jackson presented his own witnesses at trial, including his girlfriend with whom he had lived, and who had six children of her own. The girlfriend testified that no one had ever alleged that Jackson touched her children inappropriately, and that she had never witnessed Jackson do so. This witness' adult daughter testified that when Jackson lived with her family, he never tried to touch her inappropriately. A third witness testified that Jackson and her mother "used to talk" when she was a teenager, and that Jackson lived in their home for some time. This witness testified

---

[2]The trial court instructed the jury:
Polygraph evidence is considered opinion evidence and is governed by the law concerning opinion evidence . . . . A polygraph examiner's opinion can only be used to indicate whether at the time of the polygraph examination the defendant believed that he was telling the whole truth. You are not bound by the polygraph examiner's conclusions, and the examiner's testimony is not controlling on the issues and may be entirely disregarded by you. It is for you to decide what weight, if any, should be given to the evidence concerning the polygraph test, its results, and the examiner's opinions and conclusions.

that Jackson never tried to touch her inappropriately, and that she never witnessed him touch her younger sister inappropriately.

The evidence presented here was sufficient to sustain Jackson's convictions for aggravated child molestation for placing his penis in S. C.'s mouth, child molestation for touching S. C.'s breast and vagina and for placing his penis on her vagina, and sexual battery as a lesser included offense to child molestation for touching the breasts of T. C. See OCGA § 16-6-4 (a) (1) (child molestation); OCGA § 16-6-4 (c) (aggravated child molestation involves physical injury or act of sodomy); OCGA § 16-6-22.1 (a), (b) (sexual battery); see also *Wofford v. State*, ___ Ga. App. ___ (1) (Case No.A14A0868; decided October 3, 2014) (evidence sufficient to sustain aggravated child molestation conviction when defendant placed his penis in victim's mouth; sufficient for child molestation for touching victim's vagina); *Redd v. State*, 232 Ga. App. 666, 666-667 (1) (502 SE2d 467) (1998) (evidence of touching child victim's breast sufficient for child molestation conviction); *Ellis v. State*, 324 Ga. App. 497, 501 (4) (751 SE2d 129) (2013) (touching breast of victim sufficient to sustain sexual battery conviction). While Jackson argues that S. C. gave contradictory testimony, any inconsistencies were for the jury to resolve. Id. The girls' testimony alone was sufficient to authorize Jackson's convictions, but was also supported here

by the testimony of the outcry witness, the girls' mother. See *Newton v. State*, 296 Ga. App. 332, 335 (1) (a) (674 SE2d 379) (2009).

3. Jackson asserts that the trial court erred in overruling his objection to the admission of testimony regarding the change in demeanor of the victim during the time the evidence showed the molestation occurred. He argues that this resulted in the jury improperly considering "its own 'mental heath diagnosis,'" and that the State was required to offer an expert to testify concerning the meaning of the victim's conduct. We disagree.

"[A]s a general rule, [the] admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse." (Citation, punctuation and footnote omitted.) *Wheeler v. State*, 327 Ga. App. 313, 317 (2) (758 SE2d 840) (2014). While we have held that an expert may testify that a child's behavioral characteristics are consistent with those of a child who has been sexually abused, *Holsey v. State*, 199 Ga. App. 782, 784 (7) (406 SE2d 127) (1991), we find no authority, and Jackson has pointed to none, that prohibits testimony from other witnesses about a victim's demeanor during the time of the alleged acts of molestation. See, e.g., *Ochoa v. State*, 252 Ga. App. 209, 210 (1) (555 SE2d 857 (2001) (evidence that showed victim had

9

negative changes in mood and behavior during time of molestation part of sufficient evidence of molestation). Cf. *Woods v. State*, 304 Ga. App. 403, 404-405 (1) (696 SE2d 411) (2010) (citing testimony that victim's grades dropped and she became angry around the time of molestation as support for conviction). Whether this testimony was permissible was within the discretion of the trial court, and we cannot say that the court abused its discretion here.

4. Jackson contends that trial counsel rendered ineffective assistance on several grounds. Pursuant to the two-prong test set forth in *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984),

> [i]n order to prevail on his claim of ineffective assistance, [Jackson] must show deficient performance on the part of counsel and prejudice to his defense resulting from that deficient performance. Moreover, he must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. On appeal, this Court accepts the trial court's findings of fact, unless they are clearly erroneous. The trial court's legal conclusions are reviewed de novo.

(Citations and punctuation omitted.) *Griffin v. State*, 292 Ga. 321, 324 (6) (737 SE2d 682) (2013). "[A]n insufficient showing on either of the [Strickland] prongs relieves

10

the reviewing court of the need to address the other prong." (Citation and punctuation omitted.) *Fuller v. State*, 277 Ga. 505, 507 (3) (591 SE2d 782) (2004).

(a) Jackson asserts that counsel was ineffective in failing to object to the admission of the letter S. C. gave to her mother in which she made her initial outcry, because it was self-serving and bolstered the victim's testimony.[3] In the same enumeration, he complains that counsel was also ineffective in allowing the letter to go out with the jury in violation of the continuing witness rule.[4] But "the letter was not the reduction to writing of an oral statement, nor was it a written statement provided in lieu of testimony;" it was original documentary evidence of the victim's outcry, *Young v. State*, 292 Ga. 443, 446 (3) (b) (738 SE2d 575) (2013), and was therefore admissible. See *Brown v. State*, 291 Ga. 892, 897 (3) (734 SE2d 23) (2012) (admission of note allegedly written by victim admissible as original documentary evidence); see also *Foster v. State*, 294 Ga. 383, 385 (5) (754 SE2d 33) (2014)

---

[3]We note that former OCGA § 24-3-16, Georgia's Child Hearsay Statute, does not apply to the facts of this case because S. C. was 14 at the time of the outcry.

[4]Trial counsel only objected that the letter should be redacted before being published to the jury. At the hearing on the motion for new trial, counsel testified that he did not recall objecting to the admission of the letter or it going out with the jury, and that he did not "believe that there would have been any reason not to object to that if I did not."

11

(incriminating letter written by defendant to co-defendant admissible as original documentary evidence); *Vinyard v. State*, 177 Ga. App. 188, 190 (1) (338 Ga. App. 766) (1985) (private communication between witness and defendant was independent and original evidence; letter did not substitute for testimony). For this reason, it was not error for the document to go out with the jury.[5] See *Young*, supra (no continuing witness violation for letter of jailhouse informant to witness to go out with jury); *Foster*, supra. Therefore, trial counsel "was not deficient when he failed to object to the letter going out with the jury." *Young*, supra.

Moreover, even if the letter went out with the jury in violation of the continuing witness rule, Jackson has failed to show a reasonable probability that the outcome of the trial would have been different had counsel objected on that ground. With regard to Jackson's actions, the victim's letter to her mother stated only that Jackson "started touching [her] in a bad way then he started forcing [m]e to do things," and was not nearly as specific and detailed as her trial testimony concerning

---

[5]"In Georgia the 'continuing witness' objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once." (Citation omitted.) *Dunagan v. State*, 255 Ga. App. 309, 310-311 (3) (565 SE2d 526) (2002).

the specific sex acts, the progression from touching her breasts to placing his penis in her mouth and in her vagina, and the testimony that these incidents occurred more than once and when they occurred. And, in light of T. C.'s testimony, the mother's testimony concerning the circumstances of the outcry, and the polygraph examiner's testimony that Jackson was being deceptive when denying that he molested the girls, we cannot say that, had the jury not been allowed to re-consider the letter during deliberations, that the outcome of the trial would have been different. See *Zellars v. State*, 278 Ga. 481, 484 (6) (a) (604 SE2d 147) (2004) (no harm from continuing witness violation in allowing photographic array to go back with jury where same witnesses who identified defendant in array were his friends, and they testified at trial and identified him as the perpetrator).

(b) Jackson contends that trial counsel was ineffective in failing to object to the presence of S. C.'s counselor in the courtroom. The record reveals and the parties agree that when S. C. entered the courtroom to take the stand, a woman walked in with her and then sat in the courtroom audience. Trial counsel then asked to approach the bench, and the following colloquy took place:

> [Trial Counsel]: Your Honor, somebody walked in with [S. C.] I'm not sure who she is, but I want to - -

The State: She's not - - She's not a witness.

[Trial Counsel]: I just wanted to insert - - make sure that we invoke the rule at this time.

The State: That's fine. She's not - - She's just her counselor.

The Court: Okay.

(Bench Conference Concluded)

Counsel testified at the motion for new trial hearing that after he was told that the counselor was not a witness, he felt it was her right to be present in the courtroom. Jackson has failed to show that this decision was made in error. As noted by the trial court, "[t]he child testified completely on her own with no coaching or prompting by this person." Moreover, the counselor's presence or the fact that she was S. C.'s counselor was not brought to the attention of the jury. In the absence of such evidence, Jackson cannot establish the prejudice prong of the *Strickland* test. Cf. *Jones v. State*, 312 Ga. App. 15, 17 (1) (a) (717 SE2d 526) (2011) (cannot presume jury was unfairly tainted by defendant's appearance in handcuffs).

(c) Jackson argues that counsel was ineffective in failing to adequately challenge the testimony regarding the polygraph examination. He contends counsel

14

performed deficiently by failing to object to the examiner's qualifications and failing to restrict his testimony regarding the evidence to its limited lawful purpose. Trial counsel testified that he did not recall particularly asking questions regarding the examiner's foundation as an expert, but that if he didn't ask, it was for the purpose of "not further bolstering his credentials." Counsel explained further that his strategy was to challenge the manner in which the examiner conducted the examination because the video recording of the exam showed the examiner "fondling with the equipment . . . placing . . . the leads on [ ] Jackson's body . . . put them on, take them back off, and . . . he kind of went behind the machine and unplugged something and plugged it back up." Counsel testified that because it appeared either that the machine wasn't working properly or the examiner was not conducting himself properly, he chose to challenge the administration of the test.

Trial counsel's decision here was a matter of reasonable trial strategy. Cf. *Johnson v. State*, 280 Ga. App. 341, 343 (3) (c) (634 SE2d 134) (2006) (counsel's decision to attack State's polygraph expert through cross-examination and not call polygraph expert in rebuttal to save closing argument, reasonable trial strategy). And such matters do not amount to ineffective assistance. "[T]his Court does not evaluate

trial counsel's tactics and strategic decisions in hindsight." (Citation and punctuation omitted.) *Upton v. Parks*, 284 Ga. 254, 257 (2) (664 SE2d 196) (2008).

(d) Jackson asserts that counsel was ineffective in failing to object to the written summary and oral testimony of the counselor's background and education and then allowing those qualifications to go out with the jury. Trial counsel testified that he did not recall any particular reason he did not object. But Jackson has nevertheless failed to show that had counsel objected to the expert's background and qualifications and objected to those qualifications going back with the jury, there is a reasonable likelihood that the outcome would have been different. See *Young*, supra, 292 Ga. at 446 (3) (b). This claim of ineffectiveness therefore fails.

(e) Jackson asserts that trial counsel was ineffective in failing to object to the testimony of the counselor that "bolstered the truthfulness of the victim." He argues that the counselor improperly bolstered the victim's testimony when the State asked the counselor, "And by the end, did she tell you exactly what Mr. Jackson had done to her?," to which the counselor responded, "She [ ] did." "What is forbidden is expert opinion testimony that directly addresses the credibility of the victim, i.e., 'I believe the victim; I think the victim is telling the truth[].'" (Citations and punctuation omitted.) *Odom v. State*, 243 Ga. App. 227, 228 (1) (531 SE2d 207)

16

(2000). But the counselor did not give an opinion about whether S. C. was telling the truth, but rather stated simply that S. C. told her what Jackson had done. This testimony did not "*directly* address[ ] the credibility of the victim." (Emphasis supplied.) *Wright v. State*, 327 Ga. App. 658, 661 (2) (a) (760 SE2d 661) (2014) (after victim told her aunt defendant put his hand down her pants, aunt stated, "When I asked her what – he really done that, she said yeah . . . And I knew;" testimony was not improper bolstering as it was vague and ambiguous and aunt never elaborated what she knew). Because the counselor's testimony was not bolstering here, counsel's failure to object was not deficient. Id. "Failure to make a meritless objection cannot be evidence of ineffective assistance." *Hayes v. State*, 262 Ga. 881, 884-885 (3) (c) (426 SE2d 886) (1993).

(f) Jackson argues that counsel failed to adequately interview and prepare two defense witnesses for trial. Specifically, he contends that counsel's failure resulted in one witness testifying that she met Jackson though "Narcotics Anonymous," and another witness offering nothing relevant at trial because she stated that she had never been alone with Jackson. Trial counsel testified that he interviewed the first witness, but did not recall cautioning her "not to say certain things and even if I did, I'm sure those things would've came out on cross-examination either way." Counsel did not

17

recall the second witness' testimony that she had never been alone with Jackson, but the record shows this witness testified that her mother left her brothers and sisters alone in the home with him. Counsel explained that he called these two witnesses to put Jackson's good "character up." Jackson has failed to show that had these witnesses been better interviewed or prepared, they would not have testified as they did. Additionally, an attorney's instructions to a non-client witness can be explored during cross-examination, resulting in more potential harm from an allegation of coaching. "[Jackson] has offered no evidence to show a reasonable probability that more preparation would have changed the outcome at trial. To show prejudice, a defendant is required to offer more than mere speculation that, absent the counsel's alleged errors, a different result probably would have occurred at trial." (Citation and punctuation omitted.) *Porter v. State*, 292 Ga. 292, 295 (3) (c) (736 SE2d 409) (2013). Moreover, we find no reasonable probability that the complained-of testimony affected the outcome of Jackson's trial.

(g) Jackson claims that trial counsel was ineffective in failing to present testimony regarding the results of S. C.'s physical exam, which he alleges would have shown that S. C.'s hymen was found to be intact. Jackson submitted this report at the second hearing on the motion for new trial. The report stated, "Estrogenized

18

crescentic hymen [with] scalloped edges and normal vascularization . . . . Normal exam. Does not rule out sexual abuse."

Although Jackson did not produce the physician's testimony on motion for new trial, counsel testified at the hearing that "there was a note on exam the doctor did not rule out sexual abuse, but I don't believe they exclusively say that they did find signs of any abuse." Counsel was not asked during the hearing whether his failure to produce the physical exam results was part of his trial strategy. We must therefore presume that counsel's failure to do so was trial strategy and tactics that do not amount to ineffectiveness. See *Jones v. State*, 304 Ga. App. 109, 114 (2) (b) (695 SE2d 665) (2010). This conclusion is supported by the record. In closing argument, counsel pointed to the failure of the State to produce any physical evidence of abuse.

Because each ground of ineffectiveness asserted by Jackson fails either one or both prongs of the *Strickland* test, the trial court did not err in denying his motion for new trial on his claim that he received ineffective assistance of trial counsel. See, e.g., *Brock v. State*, 270 Ga. App. 250, 254 (8) (605 SE2d 907) (2004).

*Judgment affirmed. Barnes, P. J., and Branch, J., concur.*