**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 13, 2020**

# In the Court of Appeals of Georgia

A19A1708. BUTLER v. THE STATE.

DOYLE, Presiding Judge.

Following a jury trial, William Maurice Butler was convicted of aggravated assault,[1] aggravated battery,[2] aggravated stalking,[3] possession of a knife during the commission of a felony,[4] and family violence battery.[5] He appeals the denial of his motion for new trial, arguing that: (1) the evidence was insufficient to support his convictions for family violence battery and aggravated stalking; (2) trial counsel was

---

[1] OCGA § 16-5-21 (a) (2).

[2] OCGA § 16-5-24 (a).

[3] OCGA § 16-5-91 (a).

[4] OCGA § 16-11-106 (b) (1).

[5] OCGA § 16-5-23.1 (a), (f) (2).

ineffective for failing to object to the introduction of certain evidence; (3) the trial court erred when instructing the jury on evidence of prior difficulties; and (4) the trial court erred by sentencing him as a recidivist because the State failed to prove that the prior convictions were felonies under Georgia law. For the reasons that follow, we affirm the convictions, vacate the sentences, and remand the case for resentencing.

Viewed in favor of the verdict,[6] the record shows that some time in 2014, V. W. met Butler in a liquor store in Athens-Clarke County, and the two began dating. V. W. and Butler lived in the same neighborhood, and according to V. W., they lived together. The two dated for approximately a year and a half, during which time they sometimes fought.

On March 6, 2015, V. W. called the police when Butler and her son fought over payment of a cable bill. On the same day, V. W. called 911 again after Butler hit her in the head with his fist, causing two knots. Butler was charged with family violence battery, and on March 13, 2015, he was ordered as a special condition of his bond issued by the magistrate court to: have no "harassing, intimidating, threatening, provoking, or violent contact with [V. W.]"; not go to her residence, listing her address; and stay away from her person, home, or any other place where she was

---

[6] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

present. V. W. later tried to obtain dismissal of the charges against Butler arising from the March 6, 2015 incident.

On March 22, 2015, V. W. called police because she and Butler "were arguing." The officer who arrived at V. W.'s apartment found Butler in a bedroom; V. W. was not present.[7] Butler admitted that V. W. had been there with him, and he agreed to gather his belongings and leave. When the officer learned about the March 13, 2015 no-contact order, he obtained a warrant for Butler for violating a family violence order.

On April 25, 2015, V. W. and Butler spent time together at her mother's home. The two argued when another man arrived, and Butler accused her of "messing with" the other man.[8] Ten minutes after Butler left, telling V. W., "you think I'm playing with you," V. W. walked to the liquor store. V. W. entered the store, shaking, and said she needed to call the police because someone was after her. Shortly thereafter, Butler entered the store, pushed a female employee out of the way, followed V. W. behind the counter, and repeatedly stabbed her with a knife. V. W. was able to run outside

---

[7] The officer testified that one of V. W.'s children had called 911.

[8] A police officer testified that he spoke to V. W. after a hang-up call to 911 from her home, and V. W. stated that the man she was having a problem with had left, and she no longer needed assistance.

when an employee grabbed a bat in an effort to stop Butler. Butler pursued her and attempted to stab her again, a witness unsuccessfully attempted to restrain him, and Butler eventually fled. V. W. was taken to the emergency room, where she was treated for a fractured collarbone and multiple lacerations to her upper torso, some of which resulted in permanent scars.

Butler was charged with criminal attempt to commit a murder, aggravated assault, aggravated battery, aggravated stalking, three counts of second degree burglary, three counts of possession of a knife during the commission of a felony, terroristic threats, and family violence battery. At trial, V. W. testified about the April 25, 2015 attack by Butler, but claimed to be unable to recall details of the prior incidents with him. She did concede, however, that she and Butler spent time together after the March 6, 2015 incident, despite knowing that he was prohibited from having contact with her, and she testified that she sometimes called the police in an effort to get him to stop arguing with her. Multiple eyewitnesses testified about Butler stabbing V. W., the surveillance tape from the liquor store was played for the jury, and police officers testified about the 911 calls and interaction with Butler and V. W. on March 6, 2015, and March 22, 2015.

The trial court directed a verdict of acquittal as to the three counts of burglary and terroristic threats. At the conclusion of the trial, the jury found Butler not guilty of attempted murder and one of the counts of possession of a knife during the commission of a felony, but found him guilty of aggravated assault, aggravated battery, aggravated stalking, two counts of possessing a knife during the commission of a felony, and family violence battery. Butler was sentenced as a recidivist pursuant to OCGA § 17-10-7 (c) to serve 35 years without parole with the first 30 in confinement. The trial court denied Butler's subsequent motion for new trial, and this appeal followed.

1. Butler contends that the evidence was insufficient to support his convictions for family violence battery and aggravated stalking. We disagree.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[9]

---

[9] *Brown v. State*, 318 Ga. App. 334, 334-335 (733 SE2d 863) (2012), citing *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

5

(a) *Family violence battery*. "A person commits the offense of battery when he . . . intentionally causes substantial physical harm or visible bodily harm to another."[10] "If the offense of battery is committed between household members, it shall constitute the offense of family violence battery."[11] The statute defines "household member" as "past or present spouses, persons who are parents of the same child, parents and children, stepparents and stepchildren, foster parents and foster children, or other persons living or formerly living in the same household."[12]

Here, the State alleged in the indictment that Butler and V. W. "were formerly living in the same household." Butler contends that the State failed to prove that he lived with V. W. We disagree. During her testimony, the State asked V. W. whether she and Butler lived together, and V. W. replied, "Yeah."[13] Construing the evidence in favor of the jury's verdict, as we are required to do, her affirmative testimony that

---

[10] OCGA § 16-5-23.1 (a).

[11] OCGA § 16-5-23.1 (f) (2).

[12] OCGA § 16-5-23.1 (f) (1).

[13] V. W. also testified that she and Butler slept at both of their houses.

6

they lived together is sufficient to support a finding that they were "persons living or formerly living in the same household."[14]

(b) *Aggravated stalking*. OCGA § 16-5-91 (a) provides in relevant part that

[a] person commits the offense of aggravated stalking when such person, in violation of a . . . condition of pretrial release in effect prohibiting the behavior described in this subsection, follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.

Butler contends that the State failed to prove that the no-contact order issued by the court as a condition of his pretrial release for the charges arising from his March 6, 2015 arrest was still in effect on April 25, 2015. We disagree. The no-contact order was entered on March 13, 2015. Although V. W. testified that she tried to get the March 6, 2015 charges dropped, Butler pleaded guilty to the March 6, 2015 charges on June 4, 2015. This evidence, construed in favor of the verdict, is sufficient to support the jury's finding that the no-contact order was still in effect on April 25, 2015.[15]

---

[14] OCGA § 16-5-23.1 (f) (1).

[15] With respect to Butler's apparent argument that the magistrate did not have the authority to issue the March 13, 2015 no-contact order as a condition of his

2. Butler contends that trial counsel was ineffective for failing to object to the introduction of the March 13, 2015 no-contact bond order and his subsequent guilty pleas to violation of a criminal family violence order and family violence battery arising from the March 6, 2015 incident, arguing that the order and pleas were invalid because there was no evidence that he resided with V. W. on March 6, 2015. We find no basis for reversal.

> To prevail on his ineffective assistance claim, [Butler] must prove both that his counsel's performance was professionally deficient and that, but for the unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different. To prove deficient performance, [Butler] must show that his lawyer performed at trial in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms.

> This is no easy showing, as the law recognizes a "strong presumption" that counsel performed reasonably, and [Butler] bears the

---

pretrial release, we note that: "When a defendant is charged with a violent crime against a specific victim, it is within the trial court's inherent powers to require that the defendant avoid any contact with the victim as a condition of remaining free pending trial. Such condition is not arbitrary or capricious; it is a reasonable response to the trial court's function of balancing the defendant's rights with the public's safety interests, while avoiding the intimidation of prosecuting witnesses." *Clarke v. State*, 228 Ga. App. 219, 220 (1) (491 SE2d 450) (1997).

burden of overcoming this presumption. To carry this burden, he must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.

To prove prejudice, [Butler] must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. If [Butler] fails to satisfy either part of the Strickland test, we need not address the other part.[16]

Pretermitting whether Butler's attempt to collaterally attack the no-contact order and the guilty pleas is proper, as we concluded in Division 1, there was sufficient evidence — V. W.'s testimony — that she and Butler lived together. Thus, trial counsel's failure to object to the admission of the no-contact order and the subsequent related guilty pleas did not constitute deficient performance. "'Failure to

---

[16] (Citations and punctuation omitted.) *Esprit v. State*, 305 Ga. 429, 434 (2) (b) (826 SE2d 7) (2019), quoting *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984) & *Brown v. State*, 302 Ga. 454, 457 (807 SE2d 369) (2017).

make a meritless objection cannot be evidence of ineffective assistance.'"[17] Accordingly, the trial court properly denied Butler's motion for new trial on this basis.

3. Butler also argues that the trial court erred by instructing the jury to consider his prior difficulties with V. W. as evidence of "bent of mind."[18] We find no basis for reversal.

During the charge conference, the trial court asked defense counsel whether she objected to a jury charge instructing that:

> evidence of prior difficulties between the defendant and the alleged victim has been admitted for the sole purpose of illustrating, if it does, the state of feelings between the defendant and the alleged victim, the nature of their relationship, the pattern of behavior of the defendant, his bent of mind at the time of the commission of the acts for which he is being – for which he is now on trial.

---

[17] *Jackson v. State*, 330 Ga. App. 108, 117 (4) (e) (766 SE2d 558) (2014), quoting *Hayes v. State*, 262 Ga. 881, 884-885 (3) (c) (426 SE2d 886) (1993).

[18] Butler also enumerated as error the trial court's instruction to the jury to consider the prior difficulties as evidence of "course of conduct." But the trial court did not charge the jury on "course of conduct." Accordingly, this argument is not supported by the record.

Defense counsel replied that she was "okay with that." The court subsequently charged the jury:

> Evidence of prior difficulties between the defendant and the alleged victim has been admitted for the sole purposes of illustrating, if it does, the state of feeling between the defendant and the alleged victim, the nature of their relationship, the pattern of behavior of the defendant, and his motive, intent[,] and bent of mind at the time of the alleged commission of the alleged crimes for which he is now on trial.

Defense counsel did not object to any portion of the charge.

Because this case was tried after January 1, 2013, Georgia's new Evidence Code applies.[19] Pursuant to OCGA § 24-4-404 (b),

> [e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

---

[19] See *Bradshaw v. State*, 296 Ga. 650, 655 (3) (769 SE2d 892) (2015).

11

The "bent of mind" exception, "formerly an integral part of our law of evidence, ha[s] been eliminated from the new Evidence Code," and it is error to admit evidence of prior bad acts to show "bent of mind."[20]

Butler, conceding that he did not object to the jury charge, argues that plain error review applies to this enumeration. But he affirmatively waived any objection to the charge during the charge conference. "As a result, plain error does not . . . apply to these circumstances. . . ."[21]

Butler also argues, however, that trial counsel was ineffective for failing to object to the erroneous instruction. Although we agree that trial counsel should not have acquiesced in and later failed to object to the "bent of mind" portion of the jury charge, reading the charge as a whole, including the correct portions of the instructions regarding the proper purpose for admitting the prior difficulty evidence, we find no "fair risk that the jury was confused and misled as to the proper limited

---

[20] *Brooks v. State*, 298 Ga. 722, 727 (2) (783 SE2d 895) (2016). See also *Olds v. State*, 299 Ga. 65, 69 n.6 (786 SE2d 633) (2016).

[21] *McAllister v. State*, 351 Ga. App. 76, 90 (4) (830 SE2d 443) (2019). See also *Adams v. State*, 306 Ga. 1, ___ (1) (829 SE2d 126) (2019) (holding that by stating that "we don't object. I think it [the document] is proper to come in," the defendant "affirmatively waived any claim of error from the admission of the [evidence], so there was no plain error") (emphasis omitted).

12

use of [prior difficulty] transaction evidence to the prejudice of [Butler]."[22] In light of the alleged crimes in this case, the remaining portion of the charge was appropriate, and the single use of the phrase "bent of mind" did not undermine the fairness of the proceeding such that the outcome is in question. Therefore, Butler "cannot demonstrate a reasonable probability that the outcome of his trial would have been different in the absence of this charge."[23]

4. Finally, Butler argues that the trial court erred by sentencing him as a recidivist because the State failed to prove that the five Florida convictions used to enhance his sentence were felonies under Georgia law, or in the alternative, that trial

---

[22] (Punctuation omitted.)

[23] *Bellamy v. State*, 312 Ga. App. 899, 902 (3) (a) (720 SE2d 323) (2011). Compare *Dodd v. State*, 324 Ga. App. 827, 833-834 (2) (752 SE2d 29) (2013) (physical precedent only) (reversing because trial counsel was ineffective by failing to object to jury instruction that "similar transaction evidence 'may be considered for the limited purpose of showing, if it does, the state of mind, bent of mind, course of conduct, and motive of the individual and the knowledge and the intent of the defendant and the crimes charged in the case now on trial.'"); *Rivers v. State*, 236 Ga. App. 709, 712 (1) (b) (513 SE2d 263) (1999) (reversing because trial counsel was ineffective for failing to object to an instruction erroneously "informing the jury that it also could consider similar transaction evidence for the purpose of showing 'the crimes charged in the case,'" and in considering an 'element of the offense charged in this indictment,' [creating] a fair risk . . . that the jury was confused and misled as to the proper limited use of similar transaction evidence to the prejudice of [the defendant].").

13

counsel was deficient by failing to object to the admission of the prior certified convictions to support his recidivist sentence.[24]

"The existence and validity of three prior felony convictions are necessary predicates to the imposition of a recidivist sentence under OCGA § 17-10-7 (c)."[25] Here, the State relied on five prior Florida convictions to support recidivist sentencing: (1) a 1997 conviction for "dealing in stolen property" ; (2) a 1999 conviction for "grand theft III" (3) a 2002 conviction for "felony battery" ; (4) a 2007 conviction for "felony battery: great bodily harm" ; and (5) a 2009 conviction for "felony battery: great bodily harm."

Butler did not object to the admission of the prior certified convictions.[26] His failure to object, however, does not waive this issue. Certainly, an objection is required if the challenge involves "the existence or validity of the prior

---

[24] Butler raised these specific arguments in his amended motion for new trial.

[25] *von Thomas v. State*, 293 Ga. 569, 572 (2) (748 SE2d 446) (2013).

[26] In fact, Butler's attorney stated, "Your Honor, we've been made aware of these [convictions] — for quite a time now. And I've seen them again this morning, and although we're not happy about it, we don't object to the introduction into evidence."

convictions."[27] But here, Butler does not challenge the existence or validity of his

prior convictions. Instead, he challenges the effect of and use of the prior convictions,

which he alleges do not constitute felonies in Georgia, to enhance his sentence. Thus,

Butler has raised a cognizable void sentence claim, which we will review despite his

failure to object.[28]

In the recent case of *Nordahl v. State*,[29] which had not been issued at the time

Butler was sentenced or when the parties filed their initial briefs,[30] the Supreme Court

of Georgia set forth the proper analysis for determining "whether a[n] . . . out-of-state

---

[27] Id. at 573 (2). See also *Frey v. State*, 338 Ga. App. 583, 587 (3) (790 SE2d 835) (2016).

[28] See *Parham v. State*, 342 Ga. App. 754, 756 n.1 (805 SE2d 264) (2017) (addressing defendant's claim that the trial court erred by sentencing him under the general recidivist statute rather than the more specific recidivist statute applicable to his convictions, holding that his claim raised a "cognizable" claim that his sentence was void); accord *Kipple v. State*, 329 Ga. App. 94, 95 (763 SE2d 752) (2014); *Robbins v. State*, 326 Ga. App. 812, 813 (757 SE2d 452) (2014). See generally *von Thomas*, 293 Ga. at 572-575 (2) (discussing different types of challenges to prior convictions used for recidivist sentencing that can and cannot be waived by failing to object in the trial court).

[29] 306 Ga. 15 (829 SE2d 99) (2019).

[30] Butler addressed *Nordahl* and its impact on this enumeration in his reply brief.

conviction qualifies as a predicate conviction under [17-10-7 (a)]."[31] In summary, a reviewing court is required to

> identify the [out-of-state] crime used to enhance [the defendant's] sentence under OCGA § 17-10-7 . . . (c), consider whether the crime is divisible, and then parse the crime's elements using the "formal categorical" or "modified categorical" approach. . . . After establishing the elements of the [out-of-state] predicate conviction, [it should] determine whether those elements would describe a felony under Georgia law.[32]

With regard to Butler's Florida convictions for felony battery, we first identify and examine the relevant Florida statutes.[33]

(a) *2009 conviction for "felony battery: great bodily harm" in violation of Fla. Stat. § 784.05*. Butler's 2009 conviction was for "felony battery: great bodily harm," in violation of Fla. Stat. § 784.045, which provides:

(1) (a) A person commits aggravated battery who, in committing battery:

1. Intentionally or knowingly causes great bodily harm, permanent

---

[31] Id. at 18 (1).

[32] Id. at 24 (4).

[33] See id. at 24, n.16 ("When a Georgia sentencing court determines the elements of an out-of-state criminal conviction, the law of the state jurisdiction where the conviction was obtained would govern.").

disability, or permanent disfigurement; or 2. Uses a deadly weapon. (b) A person commits aggravated battery if the person who was the victim of the battery was pregnant at the time of the offense and the offender knew or should have known that the victim was pregnant. (2) Whoever commits aggravated battery shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

This statute lists elements in the alternative and is divisible.[34] Accordingly, we apply the "modified categorical" approach,[35] under which we are permitted to

scrutinize a restricted set of materials to determine whether a prior conviction qualifies as a predicate conviction under [OCGA § 17-10-7 (c)] by showing that the defendant necessarily admitted the elements of the predicate conviction in entering his guilty plea. In addition to the statute and the judgment of conviction, [we are] allowed to review the charging instrument, the terms of a plea agreement, and the transcript of a colloquy between judge and defendant.[36]

---

[34] See id. at 107, n.13 ("'A statute is divisible when it lists elements in the alternative, and thereby defines multiple crimes.'") (punctuation omitted); *United States v. Vereen*, 920 F.3d 1300, 1314 (IV) (11th Cir. 2019) (holding that in Florida, battery, as defined in Fla. Stat. § 784.03 (2), is divisible because it provides alternative methods for committing the crime).

[35] See *Nordahl*, 306 Ga. at 107 (3).

[36] Id.

The judgment for Butler's 2009 Florida conviction states that he was convicted of "Felony Battery: Great Bodily Harm." Thus, for purposes of parsing the crime's elements, the elements of the crime for which Butler was convicted are: "[i]ntentionally or knowingly caus[ing] great bodily harm."

"The [next] step in the analysis is to see whether the elements of this predicate conviction match those of a Georgia felony offense."[37] The most closely-related offense under Georgia law is aggravated battery under OCGA § 16-5-24 (a), which provides:

> A person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof.

Thus, in Georgia, "[m]alice is an essential element of the offense of aggravated battery."[38] The Supreme Court of Georgia has explained that "[a] person acts 'maliciously' when he acts intentionally *and* without justification or serious provocation."[39] Malice is not a statutory element of the Florida crime of felony battery

---

[37] Id. at 109 (4).

[38] *Wade v. State*, 258 Ga. 324, 330 (11) (d) (368 SE2d 482) (1988).

[39] (Emphasis in original.) Id.

with great bodily harm.[40] Accordingly, the elements of his 2009 Florida felony battery conviction do not match the elements of Georgia aggravated battery. Thus, his 2009 conviction did not qualify as a predicate conviction under OCGA § 17-10-7 (c).

(b) *2002 and 2007 Florida convictions for "felony battery" in violation of Fla. Stat. § 784.01.* Butler's 2002 and 2007 Florida convictions were for "felony battery" in violation of Fla. Stat. § 784.041,[41] which provides in relevant part:

> (1) A person commits felony battery if he or she: (a) Actually and intentionally touches or strikes another person against the will of the other; and (b) Causes great bodily harm, permanent disability, or permanent disfigurement. . . . (3) A person who commits felony battery or domestic battery by strangulation commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.[42]

---

[40] See Fla. Stat. § 784.045 (1) (a) (1) (as applied here, "a person commits aggravated battery who, in committing battery: . . . [i]ntentionally or knowingly causes great bodily harm.").

[41] The judgment for the 2002 conviction says simply "Felony Battery." The judgment for the 2007 conviction says "Felony Battery: Great Bodily Harm."

[42] Paragraph 2 of Fla. Stat. § 784.041 defines domestic battery by strangulation.

Pretermitting whether we apply the "formal categorical" or "modified categorical" approach, Fla. Stat. § 784.041 does not include the element of malice,[43] as does the Georgia aggravated battery statute.[44] Thus, as we concluded in Division 4 (a), the elements of Butler's 2002 and 2007 Florida felony battery convictions do not match the elements of Georgia aggravated battery and do not qualify as predicate convictions for recidivist sentencing under OCGA § 17-10-7 (c).

(c) *1997 Florida conviction for "dealing in stolen property" and 1999 conviction for "grand theft III."* Butler also argues that his 1997 and 1999 convictions are not felonies in Georgia and cannot serve as predicate offenses for recidivist sentencing under OCGA § 17-10-7 (c).

> In light of our conclusion in Division[s 4 (a) and (b)] that the [three
> Florida felony battery convictions] could not be used as . . . predicate

---

[43] Multiple other Florida criminal statutes do include malice as an element of the crime. See, e.g., Fla. Stat. § 827.03 (1) (a) ("'Aggravated child abuse'" occurs when a person: 1. Commits aggravated battery on a child; 2. Willfully tortures, *maliciously* punishes, or willfully and unlawfully cages a child; or 3. Knowingly or willfully abuses a child and in so doing causes great bodily harm, permanent disability, or permanent disfigurement to the child.") (emphasis added); Fla. Stat. § 784.048 (3) ("A person who willfully, *maliciously*, and repeatedly follows, harasses, or cyberstalks another person and makes a credible threat to that person commits the offense of aggravated stalking, a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.") (emphasis added).

[44] See OCGA § 16-5-24 (a).

offense[s] for recidivist sentencing, we need not address this argument. The recidivist statute requires three prior felony convictions; and thus, without the [felony battery convictions], [Butler] did not have the requisite number of convictions to trigger the provisions of OCGA § 17-10-7 (c).[45]

Accordingly, we vacate Butler's sentence and remand for resentencing.

*Judgment affirmed, sentence vacated, and case remanded with direction.*

*Coomer and Markle, JJ., concur.*

---

[45] *Miller v. State*, ___ Ga. App. ___, ___ (2) (Case No. A19A2229, decided Feb. 5, 2020).